## DARBY PETROLEUM CORPORATION et al. v. ROGERS et al.

No. 27698. April 5, 1938.

Rehearing Denied July 5, 1938.

Application for Leave to File Second Petition for Rehearing Denied
Sept. 27, 1938.

Giles A. Penick, Jr., for plaintiff in error Berry Petroleum Company.

I. L. Lockewitz and R. J. Roberts, for plaintiff in error Mid-Continent Petroleum Corporation of Kansas.

Anglin & Stevenson and Vernon Roberts, for plaintiffs in error Darby Petroleum Corporation, H. F. Wilcox Oil & Gas Company, Houston Oil Company of Texas, Stanolind Oil & Gas Company, and Shaffer Oil & Refining Company.

Warren & Warren, for plaintiff in error C. L. McMahon.

Orr & Woodford, for defendants in error.

PHELPS, J. Plaintiffs recovered a verdict and judgment against each of the eight defendants, covering injury to cattle caused by drinking creek water which had been polluted by the defendants in the operation of their nine oil and gas leases, and the defendants appeal.

Plaintiffs were lessees and operators of a ranch of about 2,000 acres, which ranch contained four separate pastures. The north pasture was traversed by Little Wewoka creek, which meandered through it for over a mile. This creek was the only permanent stock water in that pasture. It did not pass through the other three pastures. It was in this pasture that the plaintiffs' cattle were injured.

In the spring of 1933 the plaintiffs purchased 375 good grade Whitefaced Hereford cattle in good condition, and placed them in the east and south pastures of the ranch, where the cattle thrived, producing during that summer a 90 per cent. crop of calves with no abortions in the herd. In November of 1933, after weaning the calves, the remainder of the herd was moved to the north or bottom pasture for the winter. Shortly thereafter they began to abort calves, which were born dead. The cattle began suffering from intestinal disorders and began to lose weight and become thin. Plaintiffs did not know the cause of the trouble. Different sorts of feed were tried, and the cattle in that pasture were heavily fed. After about

60 days they were moved from that pasture and put in the feed lot, where the heavy feeding was continued and they were given fresh spring water. Nevertheless they continued to lose weight and became further emaciated. They also continued to abort their calves, so that until the fall of 1934, 102 calves were born dead.

In the fall of 1934, the plaintiffs, not yet having discovered the pollution of the creek, placed upward of 100 calves and yearlings in the north pasture. They began to lose weight, although feed was abundant. They were moved from that pasture in about 30 days, having lost both in weight and in quality, and six of them died. The total deaths, counting both years, were 13 cows, one bull and six calves, in addition to the 102 calves born dead. The largest item of damage, however, was the depreciation to the entire herd, caused by permanent loss of weight and depreciation in quality.

Up the creek some distance the defendants were operating their oil and gas leases. All leases in that oil field, except the nine leases of defendants, drained north into the North Canadian river. The nine leases of defendants drained south into the creek which traversed the land in question, and are the only leases draining into that creek. It was shown by undisputed evidence that with the exception of one defendant, hereinafter discussed, salt water in considerable quantities was being run or piped directly into the creek by each of the defendants.

The defendants assert that the witness who testified that they were permitting salt water to escape into the creek made his inspection, wherein he observed that fact, more than a year after the injuries were sustained. They say that this was too remote in point of time and that the judgment should be reversed for that reason, citing Thurman Oil Co. v. Carman, 179 Okla. 388, 65 P.2d 963. The record does not support the contention of defendants as to the evidence in this connection. It reveals that the examination was made within a week or ten days of the date upon which the cattle were last removed from the pasture. Furthermore, as stated above, the leases of the defendants were the only leases which for some years had drained into that creek, and evidence was adduced showing that the water had been of high salt content for the past several years. Also, the water immediately above the leases was not polluted. Additionally, evidence was received that the pipes in which the salt water was being emptied into the creek were corroded half their thickness, indicating that for a considerable while the same condition had existed. The vegetation where the salt water had drained was killed and barren and the soil was dead. The trees were dead. Other facts were adduced indicating that the same condition had existed for a long while. We therefore are of the opinion that the principle that presumptions do not run backward is of no benefit to the defendants in the instant case, for not only was the inspection made within a week or ten days of the last date of injury, but the physical facts circumstantially indicated that the condition found on that date had existed for several years prior thereto. Furthermore, numerous witnesses testified as to the salty condition of the water at dates interspersed throughout the several years prior to the inspection in question. No witness was produced by any of the defendants, except the one hereinafter mentioned, denying that they had actually polluted the water.

Defendants also complain that the court erred in failing to submit to the jury their theory of the case. This contention is made in connection with their complaint that the trial judge refused to give the jury the following instruction, requested by the defendants:

"You are instructed that if you find and believe from the evidence that the cattle involved herein were suffering from Bang's disease or any other disease not caused by the drinking of salt water, if any, permitted to escape by the defendants, your verdict must be for the defendants."

The trial judge correctly refused to give that instruction. The evidence produced by defendants revealed that some of the cattle were suffering from Bang's disease, but it was shown that Bang's disease does not cause loss of weight, death, or depreciation in cattle, but that its only effect is to cause the abortion of calves. The requested instruction was too broad in its scope. According to the evidence, such disease could not have caused any of the injuries which were actually suffered, other than the loss of calves, yet the instruction would have required a finding for the defendants on all of the issues as hereinafter discussed. The court did properly instruct the jury that it was the theory of the defendants that Bang's disease was the cause of the loss of calves by premature birth, and that if the jury believed that the loss of said calves by premature birth was occasioned

by that disease, then they should find for the defendants on that issue. This was all that the evidence on that issue required.

A part of defendants' fourth proposition complains of the trial judge's admitting evidence of a sample of water taken from the creek on December 5, 1934, showing that by chemical analysis the water was of a sufficiently high salt content to cause serious injuries and death to cattle. They assert that the sample of water was taken more than one year after the first of the cattle were injured. On the other hand, however, it was taken from the stream while the injury was still being sustained, while the cattle were still drinking the water. Furthermore, it was shown by the evidence that the water was very salty in the spring of 1933, in May of 1934, and in October of 1934. The only difference between its condition on those dates and on December 5, 1934, would be one of degree. This contention is without merit.

The remaining propositions involve instructions given the jury on the subject of damages, the refusal of the court to give certain instructions on that issue, and allied questions. The main contention in this respect, as well as the principal contention in the appeal, is that the trial judge in his instructions failed to lay down a sufficiently definite rule of measurement as to damages.

The damages which plaintiffs sought to recover were for four classes of injury: (1) The death of certain cattle, (2) permanent injuries to the remaining cattle in the herd, (3) loss of calves which were born dead because of the effects of the pollution, and (4) for the rental or usable value of the pasture.

The judge instructed the jury that the measure of damages for the cattle which died was their reasonable market value at the time of the loss. This was the correct rule as to this class of damages.

Concerning permanent injuries to the remainder of the herd, the trial judge told the jury that if they found the defendants liable, the plaintiffs would be entitled to "such sum as you may find from a fair preponderance of the evidence will reasonably compensate them for such loss." Defendants complain that the measure of damages should have been stated as the difference between the market value of the cattle immediately before and immediately after the injury, citing Deep Rock Oil Corp. v. Griffeth, 177 Okla. 208, 58 P.2d 323.

It cannot be said that this instruction,

as far as it went, was erroneous; the most that can be said is that the instruction was not as full and definite as it should have been. Much of the significance of the error, if any, is lost when the money amount of the verdict is compared with the amount which the great weight of the evidence indicates plaintiffs were entitled to recover. This is true, both as to this item and as to the instruction concerning loss of use of the pasture, about which defendants also complain. Entirely excluding the latter item, analysis of the evidence has convinced us that under any proper method of computing the actual detriment suffered by plaintiffs, the amount of the verdict fell short of that detriment. Proper performance of our duty impels the statement that in the light of the evidence, if either side has suffered from an error in the assessment of damages, it has been the plaintiffs. The defendants do not contend that the verdict is excessive.

In Midland Valley R. Co. v. Kersey, 59 Okla. 9, 157 P. 139, we held that in an action for personal injuries, where there is no assignment of error that the verdict was excessive, error in an instruction relating to the measure of damage is harmless, following Planters' Cotton & Ginning Co. v. Penny, 53 Okla. 136, 155 P. 516. See, also, St. Louis & S. F. R. Co. v. Walker, 61 Okla. 37, 160 P. 79; Potts v. Zolinger, 79 Okla. 262, 192 P. 1099.

In Ft. Smith & W. R. Co. v. Harman, 63 Okla. 1, 161 P. 1079, we held that where, in an action for damages for burning the grass upon a hay meadow and for damage to the grass roots, the plaintiff was entitled under the evidence and under any theory of the law to recover a sum equal to that awarded, the judgment in his favor would not be reversed for an alleged error in defining the measure of damages. The same was held in Oklahoma City v. Hoke, 75 Okla. 211, 182 P. 692.

In Defiance Oils, Inc., v. Hardzog, 178 Okla. 6, 61 P.2d 572, we held that where from an examination of the entire record it appears that the instructions given to the jury and the refusal of requested instructions have probably not resulted in a miscarriage of justice nor constituted a substantial violation of a constitutional or statutory right, this court would not reverse such judgment. See, also, Shell Petroleum Corporation v. Perrin, 179 Okla. 142, 64 P.2d 309; City of Holdenville v. Kiser, 179 Okla. 216, 64 P.2d 1223. We are unable to say that defendants were prejudiced in the assessment of damages. They do not com-

plain that they were. The record speaks convincingly that they were not.

Defendants complain considerably of the question whether plaintiffs should have been permitted to recover for the aborted calves. We notice that the trial judge did not give any instruction on damages on this question, though he did refuse the instruction requested by defendants to the effect that plaintiffs should not be permitted to recover for the loss of said prematurely born calves. The defendants cite Texas Pipe Line Co. v. Sheffield, 99 S. W.2d 684, in which the Civil Court of Appeals of Texas held that damages for loss of unborn calves, aside from damages for loss of cows carrying them, were not recoverable. That decision was based on the assumption that unborn calves have no market value, and that if such recoveries were permitted it would constitute double recovery. If the Texas case involved a situation where the weight of the cow with calf, prior to the injury, was taken as a basis for fixing the market value at that time, then we could agree. To permit recovery for the loss of the calf, and for loss of the weight of the cow by reason of the abortion, would obviously constitute double recovery. Such basis was not used in this case.

The defendants also point out that suckling calf has no market value. But the evidence in the instant case was that, although a very young calf has no market value at all, still it does have a value. The evidence was that a cow with calf at her side sells for the same as if she had no calf; the calf goes along with the cow. It therefore had no market value. But the evidence also thoroughly established the fact that said calves do have a value. It was stated by experienced cattle men that such calves were worth from $15 to $25 each to a man who is in the business of raising cattle, in which business the plaintiffs were engaged. This seems reasonable to us. As stated by the plaintiffs, such calves constitute a crop to the cattle man, and without the young calves he cannot continue raising cattle. Of course, it is true that a dead calf has no value, and an unborn calf may have no value, but the destruction of that which would prove of value to the plaintiffs, if said value is ascertainable, is compensable. It is not at all unreasonable to conclude that the loss of 102 calves, whether it be caused by killing them after they are born or by preventing them from being born, is a substantial detriment for which recovery should be permitted if their value to the owner. in his business, is shown.

In one connection, however, the plaintiffs' evidence failed. That was on the question of primary negligence of the defendant C. L. McMahon. A supplemental brief has been filed in his behalf, directing the attention of the court to this issue. We have carefully examined the record in this connection, and we find that the evidence does not reasonably sustain the finding that any salt water escaped from his lease. Whereas the other defendants emptied their salt water directly into the running stream, by pipes or otherwise, the defendant McMahon did not. His lease, situated more distant from the creek than any of the other leases, had only one well which made any salt water at all, and the most it ever made was two to four barrels a day. This salt water was not allowed to escape, but went into a large earthen pond 100 feet by 200 feet and three or four feet deep. All the testimony was that this pond never overflowed, and the only escape of water from it was an almost imperceptible seepage which did not dampen the ground more than a short distance from the bank of the pond. To conclude that any such water ever reached Little Wewoka creek is mere conjecture. No positive evidence was presented to the effect that it would, could, or did, and the circumstances, taken in their entirety, do not reasonably sustain such a finding.

The judgment of the trial court is affirmed as to all of the defendants except C. L. McMahon, and as to him it is reversed and the cause is remanded, with directions to enter judgment for that defendant.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, CORN, HURST, and DAVISON, JJ., concur. GIBSON, J., dissents.