GULF OIL CORPORATION v. MILLER.

No. 32468. Dec. 17, 1946.

175 P. 2d 335.

Wm. C. Liedtke, Russell G. Lowe, Redmond S. Cole, C. L. Billings, and James B. Diggs, Jr., all of Tulsa, for plaintiff in error.

Z. I. J. Holt and Maurice F. Ellison, both of Tulsa, for defendant in error.

PER CURIAM. In this case L. T. Miller recovered a verdict and judgment against defendant, Gulf Oil Corporation, for the loss of eight head of milk cows, loss of milk, and the value of aborted calves alleged to have occurred by reason of drinking water from a creek which had been polluted by defendant in the operation of its oil and gas leases.

The jury returned a general verdict

in favor of plaintiff in the sum of $916 and on special interrogatory submitted allowed $300 of this amount for loss of milk and $88 for aborted calves.

Defendant has appealed, and among other things asserts that the court erred in overruling its motion for directed verdict. It is contended that the evidence was insufficient upon which to submit the case to the jury; that the verdict was based upon mere speculation and conjecture and that no causal connection has been shown between the alleged negligence and the injury sustained.

The evidence shows that plaintiff was engaged in the dairy business; that he had under his control about 50 head of milk cows; that 14 of this number were leased from Mr. Simmons; that he owned a farm and pasture land in Creek county; that he pastured his cows on this land and that Nickel creek ran through the pasture. The evidence shows that the water in this creek was analyzed and that it contained 12½ per cent salt. Defendant admitted that the creek was heavily polluted and that salt water from at least three of its wells flowed into the creek. Plaintiff further testified that several days prior to February 1, 1943, he noticed that several of his cows became weak and sick and refused to eat. He called in Dr. Todd, a veterinarian, who treated his cows; that on February 11th three of his cows died; that he then removed the cows to another pasture, but some of them would break out of the pasture and return to the original pasture through which Nickel creek flowed; that he saw some of the cows drink out of this creek; that he lost another cow about March 1, 1943, and lost four additional cows between that date and July, 1944; that he lost a total number of eight cows; that he saw at least four of the cows which died drinking water from Nickel creek; that all of the cows prior to their death seemed to be affected with the same symptoms except that some of them scoured and others did not. He valued the cows from $115 to $150 per head. He further testified that

eight cows, because of their weakened condition, lost in the production of milk; that three of these cows thereafter died and five recovered; that five cows because of their weakened condition, lost their calves and testified as to the amount and value of milk lost and as to the value of lost calves. Expert testimony was offered by plaintiff tending to show that drinking salt water would cause weakening of cows and cause them to lose in the production of milk and to abort their calves.

Dr. Todd testified that a few days prior to February 11, 1943, he was called upon to treat plaintiff's cows but that he arrived too late to be of any benefit to them; that soon thereafter three of plaintiff's cows died; that he "posted" two of them, meaning that he dissected them and examined their various organs, and testified that in his opinion the cows died from drinking salt water. He further testified that drinking salt water containing 12½ per cent salt would kill livestock.

Defendant offered some rebuttal evidence. We deem it unnecessary, however, to enter into a discussion of such evidence. In such action as this, in determining the question of sufficiency of evidence, we cannot weigh conflicting evidence, but if there is any competent evidence offered by plaintiff tending to sustain the verdict, we must uphold the same. Applying this rule, we think the evidence sufficient to sustain the verdict and judgment. The facts in this case are very similar to the facts in the cases of Darby Pet. Corp. v. Rogers, 183 Okla. 415, 82 P. 2d 839; Atlantic Refining Co. v. Fulsom, 185 Okla. 357, 91 P. 2d 758, and a verdict in favor of plaintiff was sustained in each of these cases.

Defendant in support of this assignment cites, among other cases, the case of Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303. It is true that recovery was denied by this court in that case. We however, there said:

"It is noted that no proof was offered

by plaintiff to show that the various substances mentioned in his petition, or any other poisonous or deleterious substances, were in the water during the time the damages were incurred. It is sought to sustain the recovery herein upon the hypotheses, first, that the water contained poisonous or deleterious substances, and, second, that the animals and fowls died as a result of drinking the water. Neither hypothesis satisfactorily established by the evidence,"

The facts in the instant case, however, are materially different from the facts in that case. In this case it is conceded that the creek which flowed through plaintiff's pasture was heavily polluted and that salt water from at least three of defendant's wells flowed into the creek; that four of plaintiff's cows which died were seen drinking from this creek; that two of the cows were posted by a veterinary surgeon and he testified that in his opinion the cows died from drinking salt water. It is also shown by the evidence that the rest of the cows which plaintiff lost were affected with the same symptoms prior to their death as were the cows which were posted. We also held in the above case:

"If it had been proved that at the time the injuries were incurred, there were poisonous or deleterious substances in the water, harmful to animal life, or if it had been proved that the animals and fowls died as a result of drinking the water, a different situation would prevail, but the failure to prove one of these circumstances is fatal to plaintiff's right of recovery."

It will thus be seen that the evidence which we have pointed out as lacking to sustain a verdict in the above case is here supplied. We therefore conclude that the facts in the instant case bring it within the cases first above cited rather than within this case.

Defendant also assigns as error the exclusion of certain evidence offered. The record discloses that Dr. Todd in his examination stated that in his opinion drinking salt water containing one-half of one per cent salt would kill livestock; that he based such opinion upon his own experience and laboratory tests. He was then interrogated as to certain experiments made at A. and M. College at Stillwater, Okla., and a pamphlet published by the college which contained a statement as to the result of such experiment. The witness replied that he had not heard of the experiment and had not seen the pamphlet. Counsel, then reading from the pamphlet, propounded to the witness the following question:

" 'Cow No. 35 was a Grade Shorthorn. On January 9 she was started on water containing 15,000 parts per million os salt (1.5 per cent.) She refused to drink water until January 17, when she consumed 2 quarts. During this time she ate little and irregularly. The action of the rumin was silent most of the time. The water intake was increased and by January 23 she was drinking 3 gallons per day. All the grain and most of the hay supplied were consumed. She was continued on the test until February 20. During the latter month she reacted like a normal animal. The first two weeks she lost 40 pounds in weight. During the last month this weight was regained and at the conclusion of the experiment, she was sold on the open market'. Do you still say a cow can be killed on a half of one per cent of sodium chloride?"

An objection to this question was sustained. Counsel then, after further identifying the pamphlet, offered the same in evidence, which was on objection of plaintiff likewise excluded. We do not think the court committed reversible error in excluding this evidence. It is clear that the pamphlet was not admissible as independent evidence for the purpose of establishing the truth of the statements therein contained. 20 Am. Jur. p. 814, § 966; 32 C. J. S. p. 427, § 573; annotations 65 A. L. R. p. 1102. As to whether defendant had a right to read from the pamphlet and to refer to the experiment made at Stillwater in the framing of a question to be propounded to witness on cross-examination for the purpose of testing

his credibility is a question on which the authorities are in conflict. See annotations 82 A. L. R. 442. It is, however, not necessary to a decision in this case to determine that question. The record shows that notwithstanding an objection was sustained by the court to the question first propounded by counsel, he continued to cross-examine the witness concerning such experiment and the contents of the pamphlet, and in the course of such examination the witness in substance stated that notwithstanding the Stillwater experiment and the statement contained in the pamphlet he still adhered to his original opinion, that the drinking of water containing one-half of one per cent salt would kill livestock if continued for any great length of time. In this state of record the error, if any, in excluding the offered evidence is harmless. Moreover, it is conceded by defendant that the creek from which plaintiff's cows purportedly drank contained 12½ per cent salt, and it was also conceded that death would likely result to livestock from drinking water so polluted. This being true, the question as to the effect that drinking water containing one-half of one per cent salt would have on livestock is of minor importance and quite immaterial.

It is also contended that the court erred in submitting to the jury issues as to damages caused by loss of milk and aborted calves. This contention cannot be sustained. In the case of Indian Territory Illuminating Oil Co. v. Townley, 85 Fed. 2d 159, it is held that the loss of production of milk constitutes a proper element of damages recoverable in actions of this character, and in the case of Darby Petroleum Corp. v. Rogers, supra, we held that the value of aborted calves is a proper element of damages recoverable in such action. Defendant takes no issue with the conclusion reached in the above case. It is, however, its contention that the evidence was insufficient upon which to submit such issues to the jury; that the evidence wholly fails to show that the loss of milk and aborted calves was caused by drinking salt water. What we have heretofore said relative to the sufficiency of evidence answers the above contention, and applies with equal force to this assignment.

Defendant further urges that the evidence as to the loss of production of milk is so indefinite and uncertain as to the quantity of milk lost that it was impossible for the jury to calculate with any degree of certainty the amount lost or the amount of damage sustained thereby. We do not agree. Without entering into a detailed discussion of the evidence in this respect, it is sufficient to say that the evidence is sufficiently definite from which the jury could have found that there was a loss of 2,043 gallons of milk. The evidence is also sufficient from which the jury could have found that the loss in production of milk was due to drinking salt water. Plaintiff also testified that the value of the milk at the time was 60 cents a gallon and that he was making a profit on his milk of 28 cents per gallon, or a total profit on the amount of milk lost of $572.24. The jury allowed him $300 on this item. This allowance is clearly within and supported by the evidence.

The trial court committed no error in submitting these issues to the jury.

Judgment affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, OSBORN, WELCH, and DAVISON, JJ., concur.