## MEADOLAKE FOODS, Inc. v. ESTES.

### No. 4585.

Court of Civil Appeals of Texas. El Paso.

Nov. 10, 1948.

Rehearing Denied Dec. 15, 1948.

Freeman, Wolfe, Keith & Milam, David H. Brown and J. F. Holt, all of Sherman, for appellant.

Webb & Rogers, of Sherman, for appellee.

McGILL, Justice.

This is an appeal from a judgment of the 59th District Court of Grayson County. The suit was brought by appellee, as plaintiff, against appellant as defendant, to recover damages resulting from fraudulent representations alleged to have been made by defendant to plaintiff prior to the sale by defendant and purchase by plaintiff of 35 milch cows on May 15, 1945. Negligence and breach of warranty on the part of defendant, in connection with such sale was also alleged.

Plaintiff alleged that the cows were sold as milk producers for the purpose of producing milk and defendant knew they were sold for such purpose; that at the time of the sale defendant represented to plaintiff that the cows were good sound cattle, free of disease; that plaintiff relied on such representations and but for them would not have bought the cows; that the cows at the time of the sale were infected with Bang's disease and mastitis, and defendant knew they were so infected with Bang's disease; that the disease was spread among other cows which plaintiff owned and the entire herd became infected. Defendant answered by numerous special exceptions, by a general denial and specially denied that the alleged representations were made and that any of the cows sold to plaintiff were infected with Bang's disease or mastitis; affirmatively alleged that if plaintiff sustained any loss same resulted from the fact that the cows which he had at the time of the sale were infected and imparted the infection to the cows he bought from defendant; and because plaintiff's premises and barns used in the operation of his dairy were kept so as to promote the spread of infections, and plaintiff did not follow accepted practices in the management of his dairy to prevent the spread of disease among his cows, and failed to use ordinary care in the operation of his dairy to detect, minimize or halt the spread of disease throughout his herd. Upon answers to special issues submitted to a jury judgment was rendered against defendant for $6,180, $2,015 thereof being for the difference in the cash market value of the cows sold at the time of the sale

had they been free of Bang's disease and their value by reason of their being infected with Bang's disease; $2,015 thereof for the difference in the cash market value of the cows owned by plaintiff immediately before and after they became infected with Bang's disease; and $2,150 thereof being for the reasonable cash market value of the loss of milch production proximately caused by Bang's disease in plaintiff's herd.

In its amended motion for a new trial defendant urged 263 assignments of error. It has presented 43 points in its brief and asks us to consider specifications of error not presented in its brief if those presented are not convincing. Of course we can not do this.

By appropriate points appellant contends that the evidence was insufficient to show that the cows purchased from it had Bang's disease when sold and delivered; that plaintiff's other cows were free from Bang's disease at that time; that plaintiff's herd became infected with Bang's disease at any time or within any reasonable time following the purchase; or that any supposed infection of plaintiff's herd with Bang's disease was caused by the cows which plaintiff bought from defendant. The findings germane to these points in substance are: (1) some cows delivered by defendant to plaintiff on May 16, 1945 were at that time infected with Bang's disease; (14) at such time none of the cows which plaintiff already owned were infected with Bang's disease; (15) the milch cows purchased by plaintiff from defendant transmitted and communicated Bang's disease to the milch cows already owned by plaintiff.

The rule of law applicable to these findings is, that if disregarding all adverse evidence and giving credit to all favorable evidence and indulging every legitimate favorable conclusion which may be drawn from the facts proved, the findings are supported, they must be sustained. Henwood v. Neal, Tex.Civ.App., 198 S.W.2d 125.

The evidence relied on by appellee is referred to in his brief and is not challenged by appellant. We summarize the por-

tions thereof deemed material, supplemented by our own inspection of the statement of facts: The plaintiff William Glen Estes was 42 years of age at the date of the trial; he had been reared on a dairy farm in Grayson County; during his lifetime he had assisted in operating and had operated dairy farms in Grayson County, in Waco, and a 3,000 acre ranch in Llano County. In the middle of March, 1945, he bought a 527 acre dairy farm in Grayson County. He also bought from the owner thereof 30 head of milch cows. The dairy farm he bought had been selling milk to defendant as a Grade A dairy. The defendant bought milk from local dairies, including plaintiff's, and also maintained its own dairy farm and herd which it ran through its farm manager, and which it held out to plaintiff as a top milk producing herd. At the time plaintiff entered into the contract in question and bought cows from defendant he was operating a dairy with a herd of 35 cows on his farm. Plaintiff bought 35 head from defendant, which when added to his present herd gave him a herd of 70 milch cows. He testified that a dead calf with very little hair on it was born from a certain cow which he had bought from defendant, on June 9, 1945; that this cow would not breed again until October 10, when she again lost her calf; that certain other cows which he had bought from defendant aborted on June 22, 1945, July 12, 1945, July 16, 1945, July 29, 1945, July 31, 1945, and on August 3, 1945; that this epidemic ran through plaintiff's entire herd and by February 28, 1946, 27 cows in plaintiff's herd of 70 had aborted, the first 7 of which had been bought from defendant and 15 of which came from defendant's herd, the other 12 of which were originally owned by plaintiff; that 7 other cows bought from defendant would not breed; that Bang's disease causes cows to abort and slough their calves which is usually followed by retention of the afterbirth and prevents some of the cows from thereafter calving. The disease is highly contagious and will contaminate other cows over night; that the 27 cows that lost their calves between June 9, 1945 and Feb. 28, 1946 and the calves followed the symptoms of Bang's disease; that these symptoms are that 75% or 80% of the cows that lose their calves from Bang's disease retain the afterbirth, the calves come without hair and are poor and thin, whether they live or die, sometimes so poor and thin that when born alive they die in a few days; sometimes they are deformed—one or two legs shorter than the others—no sign of one eye—both eyes grown over, ulcerated places on them, completely without hair and have a palish flesh color; that from his experience with his herd and the diseases of cattle, in his opinion the cows that he bought from the defendant were infected with Bang's disease; that some of the cattle so bought were so infected when they were sold; that from the time he bought the cows from the defendant up until the time he disposed of the last of his herd, which was on June 27, 1946, Bang's disease had swept through his entire herd; that prior to the time he bought the Meadolake herd his herd was free of Bang's disease.

Clifford Blythe, defendant's farm manager between Jan. 1, 1938 and September 21, 1943, testified that Bang's disease was present in defendant's herd during the entire time that he was there; that defendant had sent him to school in Fort Worth to study Bang's disease; that he started treating the defendant's herd in 1942 for Bang's disease; that in 1942 approximately 80 cows in defendant's herd tested positive for Bang's disease; that when he left defendant's employment in 1943 there were approximately 18 cows in defendant's herd that tested positive for Bang's disease.

Eugene Bentley, who worked on defendant's farm for 7½ years during the period from 1935 to 1942, and three or four months in the winter of 1943 and spring of 1944, testified that one of defendant's cows which was sold to plaintiff had been tested, had Bang's disease and had lost a calf while he was working for defendant; that four other cows which were sold to plaintiff by defendant had Bang's disease during the time he worked for defendant. Dr. W. N. Porter, a licensed veterinarian, testified that on December 19, 1943, he delivered 600 doses of Bang's vaccine to defendant's dairy farm, together with other medicines to help remove retained after-

births; that he never tested or treated defendant's cows; that said disease is highly contagious and infectious and it is possible for one infected cow to cause the disease to spread throughout an entire herd in a very short time. He testified from a hypothetical question that the cause of the 27 abortions in plaintiff's herd above referred to was in all probability Bang's disease; that from the nature of the disease it was reasonably probable that some of the 15 cows that aborted after they were delivered to plaintiff had theretofore lost their calves.

Knox Sprowl, who had worked for approximately ten years on the Head farm where a dairy was operated, and which was purchased by plaintiff and on which plaintiff operated his dairy, and who had worked for plaintiff after the sale and was familiar with the Head herd, testified that none of the 30 cows purchased by plaintiff when he bought the Head farm had sloughed their calves before the defendant's cows were delivered, and that they did not have anything wrong with them prior to that time.

In our opinion this evidence was ample to support the jury findings above referred to. It is not the prerogative of this court to usurp the functions of the jury in an attempt to reconcile conflicts in testimony, or to pass upon the credibility of witnesses. Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, loc. cit. 618.

It was entirely within the province of the jury to disbelieve and discredit the testimony of the two veterinaries to effect that the only reliable and satisfactory test for the presence or absence of Bang's disease is by a simple laboratory blood test known as the agglutination test or by a complex culture test, as well as other testimony of these experts. The facts in Federal Underwriters Exchange v. Hightower, Tex. Civ.App., 161 S.W.2d 338, Wr. Ref. cited and relied on by appellant fall far short of the probative force evidenced by the facts here presented. There it was not even shown that the cow in question had aborted. While there, as here, there was testimony that abortions may result from causes other than Bang's disease and it was said that this would properly be considered a matter of common knowledge, there was no evidence in that case of numerous abortions with retention of the afterbirth from cows with a history of having been infected with Bang's disease nor that 75% or 80% of cows which lose their calves from Bang's disease retain the afterbirth, nor that calves aborted from such cows have the symptoms of Bang's disease. It is true that this testimony was based largely on the opinion of laymen. Appellant has presented points challenging its admissibility. Plaintiff and his witnesses other than Dr. Porter were laymen. However, at the time of the trial these witnesses had had extensive experience in the operation of a dairy farm and had had many years in which to observe dairy stock. Plaintiff had had considerable experience as a rancher and dairyman; he had witnessed the deterioration of his herd for twelve months; Blythe had witnessed the effect of Bang's disease in defendant's herd during the entire time he had served as defendant's manager and had attended school and made a special study of Bang's disease. Bentley had observed the characteristics and effect of Bang's disease on defendant's stock during the more than $7\frac{1}{2}$ years he was employed by defendant. Sprowl had worked around dairy stock for approximately ten years and had also witnessed the condition and deterioration of the plaintiff's herd from the time of the sale of defendant's cows. Under these circumstances the trial court did not abuse his discretion in permitting these witnesses to testify as above outlined, nor in admitting plaintiff's testimony on the subject of mastitis, and appellant's points complaining of such action are overruled. 2 Tex. Jur. p. 860, Sec. 114; Nations v. Love, Tex. Civ.App., 26 S.W. 232; Fort Worth & D. C. R. Co. v. Hagler, 38 Tex.Civ.App. 52, 84 S.W. 692, loc. cit 694; Texas & Pacific R. Co. v. Warner, 42 Tex.Civ.App. 280, 93 S.W. 489, loc. cit., 491, Wr. Den. (As to discretion of the trial court); O'Brien v. Von Lienen, Tex.Civ.App., 149 S.W. 723, loc. cit. 726(9); Gulf C. & S. F. R. Co. v. Brock, Tex.Civ.App., 150 S.W. 488; Davis v. Cochran, Tex.Civ.App., 275 S.W. 423, loc cit. 427, (7, 8) (Also as to discretion of the trial court).

■■ Appellant assigns points of error in the court's action in overruling defendant's motion for judgment and in sustaining plaintiff's motion for judgment because of the following findings:

"(30) Plaintiff's premises were so kept as to harbor Bang's disease.

"(31) The keeping of said premises so as to harbor Bang's disease proximately caused or proximately contributed to cause the spread of such disease.

"(34) Plaintiff failed to exercise ordinary care to minimize or halt the spread of Bang's disease.

"(35) Such failure to exercise ordinary care proximately caused or proximately contributed to cause the spread of such disease.

"(23) Plaintiff failed to minimize or halt the spread of Bang's disease by failing to employ a licensed veterinarian to inspect, examine, diagnose or treat any of his herd for such disease.

"(24) Such failure was a failure to exercise ordinary care.

"(25) Such failure to use ordinary care proximately caused or proximately contributed to cause the spread of such disease."

It is argued that under these findings plaintiff failed to show how much of his damages resulted from causes attributed to defendant and how much from his own actions. The authorities cited have no application and the points are without merit in view of the findings which are not attacked that (2) defendant's agent knew or had reason to believe that some of the cows delivered to plaintiff were infected with Bang's disease; and (9) represented to plaintiff that the cows were good and sound; (10) which representations were untrue; (12) were known by defendant's agent to be untrue; and (48) were made with the intent of deceiving plaintiff; (11) that plaintiff believed such representations were true; and (13) would not have purchased the cows if such representations had not been made. In other words, the findings show a fraud practiced on plaintiff by defendant in the sale of the cows. In such cases the injured party owes no duty to the perpetrator of the fraud to exercise ordinary care to prevent or minimize damages resulting from the fraud. The following authorities present analogous situations, not distinguishable in theory: Galveston, H. & S. A. R. Co. v. Zantzinger, 92 Tex. 365, 48 S.W. 563, 44 L.R.A. 553, 71 Am.St. Rep. 859; Southwestern Gas & Electric Co. v. Stanley, Tex.Civ.App., 45 S.W.2d 671, affirmed 123 Tex. 157, 70 S.W.2d 413; International Printing Pressmen and Assistants' Union v. Smith, 145 Tex. 399, 198 S.W.2d 729, loc. cit. 738 (17th).

■■ Special issue No. 15 which was answered in the affirmative, was as follows: "Do you find from a preponderance of the evidence that the milch cows purchased by Estes from defendant transmitted and communicated Bang's disease to the milk cows already owned by Estes? Answer yes or no."

In view of this finding and the findings (50) (51) (52) (53) and (54) as to damages resulting to plaintiff's herd from Bang's disease, appellant's point that the court erred in rendering judgment for plaintiff in view of the objection that there was no submission of the issue whether Bang's disease existed among plaintiff's herd following the delivery of the cows bought from defendant is entirely without merit and it is overruled. Appellant also complains of the manner of submission and of the form of special issue No. 15. The issue was submitted unconditionally. The point is that it improperly assumed that the cows bought by plaintiff from defendant had Bang's disease; that none of plaintiff's other cows had Bang's disease or were a carrier of Bang's disease; and that Bang's disease existed among plaintiff's herd at some unspecified date following delivery of the cows bought by plaintiff from defendant, all of which were controverted facts. Also that it constituted a comment by the court on the weight of the evidence. It is well settled that an issue which assumes contested issues of fact is objectionable. Johnson v. Zurich General Accident & Liability Ins. Co., 146 Tex. 232, 205 S.W.2d 353, loc. cit. 354(3).

However, we think the issue is not subject to the objections levelled against it. It may be true that the cows purchased by

plaintiff from defendant could not transmit Bang's disease to plaintiff's other cows unless the cows purchased had Bang's disease or were carriers, and unless Bang's disease did not exist in the cows then owned by plaintiff. It does not follow that the issue in the form and manner it was submitted assumes these facts. Rather, it seems to us that implicit in the inquiry as to whether the cows purchased transmitted and communicated the disease to the cows owned by plaintiff are findings as to the existence or non-existence of these facts. These are evidentiary matters, necessarily considered in answering the inquiry submitted. The issue in no way indicates how the court felt about the matter and cannot be construed as a comment on the evidence. We overrule this point. We also overrule without discussion appellant's point that the court erred in excluding the testimony of the witness Taylor Cockburg to effect that most herds of any size sooner or later have some Bang's disease in them. The proffered testimony could have had no possible bearing on the issues involved and was clearly inadmissible. The letters from the witness H. Bost to W. D. Head dated October 27 and Nov. 7, 1935 (defendant's exhibits Nos. 9 and 10) were inadmissible as primary evidence. They were written by and addressed to strangers to the suit. 17 Tex.Jur. p. 379, Sec. 131.

The court did not abuse his discretion in refusing to admit them for the purpose of impeachment, since Bost had admitted on cross-examination every fact which the letters tended to establish. 45 Tex.Jur. p. 165, Sec. 286.

Appellant's point complaining of the court's action in excluding these exhibits is therefore overruled.

 Appellant states in its brief that certain hypothetical questions propounded by plaintiff to the witness Dr. W. N. Porter of which it complains, are of such length that they are omitted from the brief. For like reason they are omitted from this opinion. The complaint is that the questions assumed certain facts not supported by the evidence, i. e., that for many years the defendant's herd had tested positive for Bang's disease; that defend-

ant's herd had a long history of many years of cows losing their calves from abortions; the order of abortions in plaintiff's herd; that plaintiff's herd did not at the time defendant's cows were delivered have Bang's disease. Also that one of the questions required the witness to disregard the fact that no blood test was made. The evidence above summarized, together with that outlined in appellee's brief under these points amply supports the assumptions incorporated in the hypothetical question. As heretofore said, the jury was not required to believe that a blood test was essential to determine Bang's disease, and the doctor could therefore give his opinion on the facts assumed in this hypothetical question, even though it called for an opinion, absent a blood test. We therefore overrule these points.

 Complaint is made of the alleged misconduct of appellee's counsel in endeavoring to get before the jury evidence that the defendant had sold cows to other people at about the time plaintiff bought the cows in question, who had experienced trouble with Bang's disease, and of the court's refusal to grant a mistrial because of such misconduct, and of other action of the court in this respect. We have read the references to the Statement of Facts covered by these assignments and also defendant's bill of exceptions No. 4 relative thereto, and overrule the point. Answer to the question propounded by plaintiff's counsel: "At the time Meadolake sold you these cows did they sell cows to other dairymen here in the county?" was not permitted and the jury was instructed not to consider the question for any purpose, and to disregard it. We are not called upon to pass upon and do not pass upon the admissibility of the testimony elicited. If it be conceded that it was inadmissible, in view of the instruction no reversible error is shown in the conduct of counsel or court.

 When the jury first tendered its verdict into court they had answered special issue No. 49 in the affirmative. The effect of this answer was that the representation made by defendant's agent to plaintiff that the cows were good and

sound was intended and understood as a mere expression of opinion. The court refused to receive the verdict and instructed the jury that their answers to special issues Nos. 9, 10, 11 and 12 conflicted with their answer to Special Issue No. 49, and sent them back to attempt to reconcile such conflict. They then answered Special Issue No. 49 in the negative. Appellant's point of error is that there was no conflict between the answers to special issues Nos. 9, 10, and 11 and the answer to Special Issue No. 49, and that therefore even conceding that the answers to special issues Nos. 12 and 49 were in conflict the action of the court was erroneous and prejudicial. There can hardly be an expression of opinion known to be untrue—in other words, an opinion known to be untrue is not an opinion at all, the terms are contradictory. Therefore a conflict did exist between the answer to Special Issue No. 12 and the tendered answer to Special Issue No. 49. Appellant was in no way prejudiced because the answers to special issues Nos. 9, 10 and 11 heretofore set out did not conflict with the tendered answer to Special Issue No. 49; indeed an intelligent effort to reconcile the answer to Special Issue No. 12 with the tendered answer to Special Issue No. 49 would necessitate an examination of Special Issues Nos. 9 and 10 and the answers thereto in order to ascertain what were the untrue representations of defendant's agent which the answer to Special Issue No. 12 found were known to him to be untrue, in determining whether or not they were intended by him as mere expressions of opinion. It was the duty of the court to call the jury's attention to conflicting findings and send them back for further deliberation. Rule 295, Texas Rules of Civil Procedure. Traders & General Ins. Co. v. Carlile, 138 Tex. 523, 161 S.W.2d 484 (Opinion adopted).

The court substantially performed this duty. We overrule this point.

■ No point is presented as to the award of $2,015 damages for the difference of the cash market value of the cows sold had they been free of Bang's disease and their value by reason of their being infected, or of the failure to award the correct amount of damages in lieu of this item, i. e., the difference between the value of the cows sold in the condition they were delivered and the price paid for them. Appellant does present a point complaining of the submission of the issue as to plaintiff's alleged damages for loss of milk production and of the allowance of $2,150 as damages therefor. We sustain this point. Apart from the lack of evidence showing the expense of production, in the absence of which such damages are speculative, the inclusion of this item in the judgment allows recovery of double damages. Appellee has cited no authorities to sustain this item and we have found none except Schrank v. Philibeck, 251 Wis. 546, 30 N.W.2d 233, which indicates that such damages may be recoverable. However, the question of double damages was not discussed in that case. Except for the decree of the speculative feature there is no distinction between such damages and damages for the loss of the value of the aborted calves which was held to be an improper element which would have constituted double damages in Texas Pipeline Company v. Sheffield, Tex.Civ.App., 99 S. W.2d 684, 685, where the late Chief Justice Alexander said; "Plaintiffs will be fully compensated by allowing them the difference in the market value of their cows in the condition that they were in immediately prior to their injury and their market value after the injury and after they had been caused to lose their calves. * * * to allow the difference in the market value of the cows before and after the injury and also the value that the calves would have had if they had been born alive would be allowing double damages," citing numerout authorities. While the soundness of this decision was questioned in Darby Petroleum Corp. v. Rogers, 183 Okl. 415, 82 P.2d 839, loc. cit. 842, we are convinced that it is supported by the authorities cited and is the law in Texas.

The judgment is reformed so as to eliminate therefrom the item of $2,150 allowed for loss of milk production, and as so reformed it is in all respects affirmed.

Reformed and affirmed.

### On Motion for Rehearing.

 In its Motion for Rehearing appellant seems to concede as an abstract proposition our holding that because of the fraud practiced on plaintiff by defendant, plaintiff owed no duty to defendant to exercise ordinary care to prevent or minimize damages resulting from the fraud. The contention now urged is that not only did plaintiff fail to show that all of the damage suffered by him was proximately caused by defendant's fraud, but that the jury findings affirmatively show that part of the damage was not proximately caused by such fraud because of the findings that plaintiff's premises were so kept as to harbor Bang's disease, which proximately caused or contributed to the spread of the disease; and since there is no showing how much of the damage was proximately caused by the fraud and how much by the premises being kept so as to harbor Bang's disease, plaintiff could recover nothing and defendant was entitled to a judgment accordingly.

A complete answer to such contention is that the jury found that the reasonable cash market value of the cows sold and delivered by defendant to plaintiff by reason of their being infected with Bang's disease at the time they were delivered was $1,750. As pointed out in our original opinion on this finding and the other findings relating to the fraud, plaintiff was entitled to judgment for the difference between this sum and the price he paid defendant for such cows. This is so regardless of any damages he may have suffered because of the spread of the disease. The error pointed out to the trial court in defendant's motions for an instructed verdict, for judgment and for judgment non obstante veredicto and which is urged here is that plaintiff was not entitled to any judgment, not that the only judgment to which he was entitled was that above indicated. Since in any event plaintiff was entitled to such judgment, the error assigned and now urged on Motion for Rehearing is without merit.

 However, had appellant pointed out to the trial court that the only judgment which could be supported by the verdict was for the difference between the value of the infected cows purchased by plaintiff from defendant and the amount plaintiff paid for such cows, and had appellant urged the point here that the judgment rendered is erroneous, for this reason we think such contention could not prevail. It is elementary that there may be more than one proximate cause of damage. The condition of plaintiff's premises could not proximately cause or contribute to the spread of the disease unless the disease existed in the herd. According to the findings Bang's disease did not exist in plaintiff's herd before he purchased the cows from defendant. These cows transmitted and communicated the Bang's disease to the cows theretofore owned by plaintiff. As we construe the findings, not a part but all of the damage suffered by plaintiff was proximately caused by the fraud practiced on him by defendant. Appellant in its motion seems to place a similar construction on the findings. It says: "The jury thus found that there were two causes of appellee's damages, one being a cause chargeable to the appellant and the other being the antecedent or concurrent actions of appellee himself for which the defendant was in no wise responsible."

Since the communication of the disease from the cows purchased from defendant to those then owned by plaintiff was a proximate cause of the damage suffered by plaintiff, the fact that such damages were also proximately caused or contributed to by the condition of plaintiff's premises is of no consequence. To illustrate: Let us suppose plaintiff had stored material in his barn and dairy buildings on his premises; that the buildings were in fact fire traps, being of highly inflammable character; that defendant intentionally lighted a match to the material and because of the nature of the buildings a conflagration ensued which destroyed all of the material, and that the fact that the buildings were highly inflammable proximately caused the conflagration to spread. It would be mere sophistry to contend that the defendant's act in applying the match did not proximately cause the conflagration and all the resulting damage. The same is true here; defendant's fraud in selling plaintiff dis-

eased cows proximately caused all of the damages he suffered. We have carefully considered all of the authorities cited on this point in appellant's Motion. It would serve no useful purpose to discuss them. In our opinion all of them are distinguishable.

A more serious question is whether we were correct in our original opinion in holding that plaintiff owed no duty to exercise ordinary care to prevent or minimize damages resulting from defendant's fraud. A majority of the court adheres to this holding, relying principally on the language in the Zantzinger case. However, should we be in error in this respect, the disposition of the case would be the same under our view that the defendant did not raise the point in the trial court that the judgment rendered was merely erroneous in this respect, but contended that he was entitled to judgment, that plaintiff take nothing, and such is his contention here. The Chief Justice concurs in the disposition of the case but is of the opinion that the plaintiff did owe a duty to exercise ordinary care to avoid the consequences of defendant's wrong.

Appellant objects to the statement in our opinion that plaintiff had "assisted in operating and had operated dairy farms in Grayson County in Waco, and a 3000 acre ranch in Llano County."

The inaccuracy is based on plaintiff's testimony to effect that at Waco, together with other stock he bought and sold dairy stock. The statement is corrected in this respect. Objection is also made to the statement that defendant "held out its herd to plaintiff as a top milk producing herd."

This statement is borne out by plaintiff's testimony. Objection is also made to the statement that "plaintiff bought 35 head from defendant, which when added to his present herd gave him a herd of 70 milch cows."

This statement is in accordance with plaintiff's testimony. Appellant is correct in stating that it developed on cross-examination of plaintiff that he had bought 17 additional cows during the time he operated his dairy. Further objection is made to the statement that plaintiff testified: "that from his experience with his herd and the diseases of cattle in his opinion the cows that he bought from the defendant were infected with Bang's disease; that some of the cattle so bought were so infected when they were sold."

The statement is supported by the record referred to by appellant.

As indicated in our original opinion, special issue No. 15 inquiring whether the cows purchased by plaintiff from defendant transmitted and communicated Bang's disease to the cows already owned by plaintiff was a controlling issue and the questions as to whether or not defendant's cows so purchased had Bang's disease and whether or not plaintiff's cows owned by him at the time of purchase were free from Bang's disease were evidentiary in the determination of this controlling issue. The court did not err in refusing to submit these evidentiary issues.

We have carefully considered all of the points urged in appellant's lengthy motion, and find no merit in them.

The motion is respectfully overruled.