**RICHTER'S BAKERY, INC., et al.,
Appellants,**

**v.**

**O. L. VERDEN, Sr., et al., Appellees.**

**No. 4413.**

Court of Civil Appeals of Texas.

Waco.

Sept. 23, 1965.

Rehearing Denied Oct. 14, 1965.

John E. Lewis, Adams, Graham, Lewis & Graham, Harlingen, for appellants.

Carter, Stiernberg, Skaggs & Koppel, Harlingen, for appellees.

McDONALD, Chief Justice.

This is an appeal by defendants from a judgment for plaintiffs in a personal injury case. Plaintiff Verden, Sr., individ-

ually and as next friend of his minor son, sued defendants for damages resulting from injuries sustained by Verden, Jr. in a collision between a motor scooter driven by Verden, Jr. and a bakery truck owned by defendant Richter, and driven by defendant Fonseca. Trial was to a jury which found:

1, 2) Defendant Fonseca failed to keep a proper lookout; which was a proximate cause of the collision.

3, 4, 5) Defendant Fonseca moved his vehicle to the left when such movement could not be made with safety; which was not negligence; and which was a proximate cause of the collision.

6) Before the collision defendant Fonseca was within the intersection intending to make a left turn.

7) At the time inquired of in 6), the motor scooter of Verden, Jr. approaching from the opposite direction was so close to such intersection as to constitute an immediate hazard.

8, 9, 10) Defendant Fonseca failed to yield the right-of-way in making the left turn, which was negligence; and a proximate cause of the collision.

11) Plaintiff Verden, Jr. did not fail to keep a proper lookout.

13) Plaintiff Verden, Jr. was not driving his motor scooter at a greater speed than was reasonable and prudent.

16) Plaintiff Verden, Jr.'s failure to drive his motor scooter to the left of defendant's vehicle was not negligence.

18) Plaintiff Verden Jr.'s motor scooter was equipped with adequate brakes.

21) Plaintiff Verden Jr. was not negligent in not having front wheel brakes on his motor scooter.

23) Plaintiff Verden Jr., before the collision, did not fail to make proper application of his brakes.

28) The collision was not the result of an unavoidable accident.

31) $1500 will fairly compensate plaintiff Verden, Jr. for pain and suffering from date of injury to trial.

32) $5000 will fairly compensate plaintiff Verden, Jr. for future pain and suffering.

33) $1550 is cash value of time lost by Verden, Jr. in performing work and services for his father, Verden, Sr., from date of injury to trial.

34) $3550 will reasonably compensate Verden, Sr. for diminished capacity of Verden, Jr. to perform work and services from date of trial until Verden, Jr. reaches 21 years of age.

35) $18000 will reasonably compensate Verden, Jr. for diminished capacity to work after he becomes 21.

36) $1911.90 is reasonable medical expense from date of injury to trial.

37) $7500 is reasonable compensation for future medical expenses for Verden, Jr.

The trial court rendered judgment on the verdict for $32,000 for plaintiff Verden, Jr., and $7011.90 for plaintiff Verden, Sr.

Defendants appeal on 41 points which we summarize as presenting the following contentions:

1) The trial court erred in refusing to permit defendants to introduce into evidence a diagram of the scene of the accident which was attached to the deposition of Verden, Jr., and in refusing to admit into evidence portions of Verden Jr.'s deposition.

2) There is no evidence, or insufficient evidence, to support the jury's an-

swers to Issues 1, 2, 7, 8, 9, 10, 11, 13, 16, 18 and 23.

3) Plaintiffs' counsel made improper argument to the jury and advised the jury of the effect of their answers to the issues submitted.

4) The trial court erred in not granting a mistrial because witnesses Stone and Dierks engaged in conversation with a juror.

5) The trial court erred in not granting a mistrial because during the trial Mrs. O. L. Verden, Sr., wife and mother of plaintiffs, became ill and began crying, and was witnessed by at least 2 jurors, and that this was highly prejudicial to defendants.

6) The trial court erred in not granting a new trial because counsel for plaintiffs had previously represented the son of one of the jurors in a criminal proceeding which information was not made known to defendants' counsel prior to the jury having been selected.

7) There is no evidence, or insufficient evidence, to support the jury's answers to Issues 33, 34, 35 and 37, and some are excessive.

 We revert to contention 1). Soon after the accident defendants took plaintiff Verden Jr.'s deposition. In connection with such deposition Verden Jr. placed a cotton truck and trailer which preceded him on the highway, in a certain position on a diagram. On the trial of the case Verden Jr. testified that such vehicles were in a different position from that in which he placed them at the time his deposition was taken; and further testified that when his deposition was taken, he had placed the vehicles in the position indicated on the diagram, to-wit: the westermost northbound lane, but that he was now "pretty sure" that the truck and tractor had been traveling in the eastermost northbound lane. Verden Jr. repeatedly admitted making the prior inconsistent statement in his

deposition and placing the vehicles in the westermost lane at the time of the taking of his deposition. Counsel for defendants then offered the diagram in evidence and counsel for plaintiffs objected. Counsel for defendants then said: "We offer it (the diagram) as direct evidence of the testimony of the witness at that time and for impeachment as to the placing of the vehicles on the highway as being different from where he testified to during this trial." The trial court excluded the diagram. The trial court did not err in refusing to admit the diagram and related testimony for the purpose of impeachment since Verden Jr. had admitted every fact which the diagram and related testimony could establish. Employers Liability Assur. Corp. v. Groninger & King, CCA (n. r. e.) 299 S.W.2d 175; Meadolake Foods v. Estes, CCA (n. r. e.) 218 S.W.2d 862; McCormick & Ray, Tax Law Evidence, p. 543. The diagram was also offered by defendant as "direct evidence," and for impeachment. The rule is that if counsel offers evidence and states a purpose for which it is inadmissible, he cannot complain of the ruling of the court in excluding it, even though there was some other purpose for which it could have been received. 1 McCormick & Ray, Evidence, p. 19; Long v. Galveston Elec. Co., CCA, Er. Dis., 59 S.W.2d 228; Singleton v. Carmichael, CCA (n. r. e.) 305 S.W.2d 379. In any event the exclusion of the diagram and related testimony in no way harmed defendants. Rule 434, Texas Rules of Civil Procedure.

Defendants' 2nd contention asserts that there is no evidence, or insufficient evidence, to sustain the jury's answers to Issues 1, 2, 7, 8, 9, 10, 11, 13, 16, 18 and 23. In such issues the jury found: that defendant did not keep a proper lookout, and failed to yield the right-of-way to plaintiff, and that such was negligence proximately causing the collision; and acquitted paintiff of various acts of negligence.

The record reflects that on August 26, 1963 around 7:45 Verden Jr. was traveling

north on his motorscooter on State Highway 506 within the City limits of Santa Rosa, Texas. The highway at that point is divided into two northbound traffic lanes and two southbound traffic lanes, each 12 feet wide with an 8 foot parking lane located on each side of the highway. Verden Jr. was traveling less than 30 miles per hour on the right hand side of the eastermost northbound lane, and from 100 to 150 feet behind a truck pulling a cotton trailer. As Verden Jr. approached the intersection of Highway 506 and La Feria Street, which was about 50 feet wide, his view of such intersection was partially blocked by the truck and trailer in front of him. At about the same time defendant's truck driver Fonseca was traveling south in defendant's truck in one of the southbound lanes on Highway 506. Fonseca testified that when he reached the intersection of Highway 506 and LaFeria Street he waited for the oncoming truck and cotton trailer to go by, then made a left turn into the intersection. When Verden Jr. first saw defendant's truck it had already cut behind the truck and cotton trailer as they passed through the intersection and had started across. Fonseca never saw Verden Jr. until he heard the squeal of his brakes. At this point Fonseca looked to his right and saw Verden Jr. stomping on his brakes trying to stop. Verden Jr. skidded approximately 55 feet, then laid his motorscooter over on its side in an instinctive effort to protect himself and slid against the rear of defendant's truck, being seriously injured on the impact.

The speed limit at the intersection was 35 miles per hour. Verden Jr.'s motorscooter had rear brakes only and a valid Texas Inspection sticker, and was in good condition.

We think the jury justified in answering the issues as they did; that such answers are supported by ample evidence; and are not against the great weight and preponderance of the evidence. Further, defendants' complaint as to Issue 13 was not raised in Motion for New Trial and is not before this court.

Defendants' 3rd contention complains that plaintiffs' counsel made improper argument and advised the jury of the effect of their answers to the issues. The entire jury argument of some 108 pages is before us by bill of exception, and no purpose would be accomplished by detailing it here. We have serious doubt that argument of plaintiffs' counsel was improper under the record. The portions most complained of were invited by defendants' argument; and in any event no harm is shown. Rule 434, T.R.C.P.; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

Defendants' 4th contention complains that witnesses Stone and Dierks, during a recess, engaged in conversation with a juror; and contention 5 asserts that the fact that Mrs. O. L. Verden Sr. became ill and began crying which was witnessed by at least 2 jurors was highly prejudicial to defendants. The record reflects that the witnesses did not discuss the case with the jurors, and only spoke briefly to the jurors. No harm is shown. Likewise, no harm is shown by the jurors' observation of Mrs. Verden Sr. Rule 327, T.R.C.P.

Defendants' 6th contention complains counsel for plaintiffs had previously represented the son of a juror in a criminal proceeding. The juror was asked no question on voir dire concerning her acquaintance or relationship with plaintiffs' counsel.

Defendants' 7th contention is that there is no evidence, or insufficient evidence, to support the jury's answers to Issues 33, 34, 35 and 37, and that some are excessive.

Issue 33 awards plaintiff Verden Sr. $1550 as the value of Verden Jr.'s services from the date of injury to the

time of trial; and Issue 35 awards Verden Sr. $3550 as the value of Verden Jr.'s diminished capacity to work from the date of trial to the time Verden Jr. reaches 21 years of age. Prior to the accident Verden Jr. was working as a welder's helper, earning $1.25 per hour. He was averaging $200 per month during the summer months; and worked part time during the school months. He helped his father after school and on weekends in the family farming business. In the 15 months between the accident and the time of trial, Verden Jr. had not done any welding work or farm work. Verden Jr. had 22 months from the date of trial until he became 21. At the time of trial Verden Jr. testified he could not bend or make sudden movements; he had constant pain in his neck; and suffered from low back pain. Dr. Beachner testified he was a borderline case of total disability. We think the answers to Issues 33 and 35 supported by ample evidence, and the amount not excessive under the record.

 Issue 35 awards plaintiff Verden Jr. $18,000 for diminished capacity to work after he becomes 21; and Issue 37 awards him $7500, as reasonable compensation for future medical expenses. As noted, Verden Jr. testified he was in pain; Dr. Beachner testified he was a borderline case of total disability; Dr. Hecht testified he could not go out and start working 8 hours a day; he was not fit for army service and was not employable by any employer who had a history of his injury or who made screening X-rays of his back. Dr. Hecht further testified Verden Jr. should look for a job as a clerk who can alternate between sitting down, standing and walking. His life expectancy was 49 or 50 years. Dr. Beachner testified he would need chiropractic treatments for the rest of his life, costing $200 to $300 per year. Dr. Milam testified his medical bills directly related to the accident would amount to $3500 or $4000 over the next 50 years. We think the award of $18,000 for diminished capacity to work and $7500 for future medi-

cal care supported by ample evidence and not excessive.

All of defendants' points and contentions have been considered and are overruled.

Affirmed.