## BROWNING v. NESTING et al.

### No. 11883.

Court of Civil Appeals of Texas. San Antonio.

Jan. 5, 1949.

Rehearing Denied Feb. 9, 1949.

 

Morriss, Morriss & Boatwright, of San Antonio, for appellant.

Davis, Hall, Clemens & Knight, of San Antonio, for appellees.

NORVELL, Justice.

The record in this case presents a tragic situation involving two sisters, who in the latter years of their lives have become embroiled in a bitter controversy over the family home. The statement of facts contains over 700 pages. Appellant has filed two briefs, containing a total of 142 typewritten pages. Appellees' brief is 88 pages in length. We have given these briefs and the authorities therein cited our careful consideration. However, we are obviously unable to discuss in detail all of the contentions and ramifications thereof present-

ed by the parties and keep this opinion within reasonable bounds.

The record discloses that on September 25, 1942, the appellant, Cleora S. Browning, conveyed 94 acres out of a larger 112 acre tract to her sister, the appellee Ada Mae Nesting. The land conveyed is situated on the outskirts of the town of Medina in Bandera County, Texas, and a dwelling house is located thereon.

This suit was brought to set aside said conveyance. Mrs. Browning, as plaintiff, complained of her sister, Mrs. Nesting, and husband, C. O. Nesting, and alleged that she executed the deed as the result of undue influence and fraud practiced upon her by the defendants.

The case was submitted to the jury upon three special issues, which, together with the jury's answers thereto, are as follows, viz.:

"Question No. 1. Do you find from a preponderance of the evidence that the plaintiff, Cleora S. Browning, at the time she executed the deed in question conveying the 94 acre tract of land to Mrs. Ada Mae Nesting, was caused to do so by the exercise of undue influence upon her by the defendants, Ada Mae Nesting and C. O. Nesting, or either of them?

"Answer 'Yes' or 'No.'

"Answer: No.

"Question No. 2. Did the defendants, Ada Mae Nesting and C. O. Nesting, at the time of making the agreement to maintain and support Mrs. Browning for the rest of her life in the home on the property to be conveyed to them by Mrs. Browning, in good faith intend to carry out and perform such agreement?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Question No. 3. Have the defendants since receiving the deed to the property in good faith substantially performed their agreement to maintain and support Mrs. Browning in the home on the property in question to the extent that she permitted them to do so?

"Answer 'They have' or 'They have not.'

"Answer: They have."

Judgment was rendered that Mrs. Browning take nothing; title to the property was quieted and confirmed in Mrs. Nesting, subject to an agreement on the part of Mr. and Mrs. Nesting to maintain, care for and support Mrs. Browning "for the rest of her life in comfortable circumstances in the home on said premises and to pay for all such medical attention, hospitalization and medicines and to furnish all necessary clothing which she might need or require during the remainder of her life."

Appellant attacks this judgment by thirty-four points which, for purposes of discussion, may be treated as presenting the following contentions:

(1) The trial judge should have peremptorily instructed the jury to find for the appellant or should have rendered judgment non obstante veredicto, or, as an alternative, the jury findings should have been set aside as being against the overwhelming preponderance of the evidence. (Points 1, 2, 3, 33, 34.)

(2) The court erred in ruling upon exceptions to the pleadings. (Points 4, 5, 6, 7.)

(3) The court erred in the method employed in submitting the case to the jury. (Points 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32.)

(4) The court erred in its rulings admitting or excluding evidence. (Points 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21.)

Appellant particularly emphasizes as her primary contention the points which assert that she was entitled to judgment as a matter of law. In considering this contention, as well as the assertion that the jury's findings are against the overwhelming preponderance of the evidence, the applicable rule is that which was stated by our present Chief Justice in Moore v. Marines, Tex. Civ.App., 269 S.W. 825, 826, as follows:

"We are required under well-established rules to look most favorably upon the testimony tending to support the jury's findings, and under that test to uphold those findings if they appear to be founded upon material and substantial evidence; unless, indeed, the evidence to the contrary

preponderates so overwhelmingly that no reasonable mind could disregard the one and give effect to the other, or reconcile the two so as to support the jury's findings."

In keeping with the rule stated, we make the following statement of the case:

Prior to 1938, the property here involved was occupied by the appellant and her husband as their home. In the year mentioned Mr. Browning died. Mrs. Browning was then about seventy years of age and had been married for about forty-five years. Mr. Browning's death came as a great shock to appellant, as he died suddenly and appellant discovered his body out in the yard of their home.

Mrs. Nesting was about fifteen years younger than her sister, Mrs. Browning. In 1904, she married C. O. Nesting and shortly thereafter moved to the State of Iowa and then to the State of Arizona, where Mr. Nesting was employed by a railroad company. All of Mrs. Browning's brothers and sisters, with the exception of Mrs. Nesting, are dead. It seems that Mrs. Browning, as the elder sister, had assisted in the rearing of Mrs. Nesting, helped send her to school and college and was very fond of her younger sister and reposed a great deal of confidence in her. After Mrs. Nesting's marriage and her removal to the State of Iowa, the two sisters saw comparatively little of each other. Mrs. Nesting, however, was in Bandera County at the time of Mr. Browning's death, but after the funeral returned to the State of Arizona, where the Nesting family then resided.

Upon the death of her husband, Mrs. Browning was confronted with the problem of making arrangements so that she could be cared for in the later years of her life. She was not in good health but was suffering from diabetes and to some extent from arteriosclerosis, or hardening of the arteries. Mrs. Browning procured a couple, Mr. and Mrs. Akin, to come and live with her and the three of them lived upon the place until 1942.

This arrangement was recognized as a temporary expedient, and in 1940 Mr. and Mrs. Nesting visited Mrs. Browning and the matter of the Nestings' moving to Texas and living with Mrs. Browning was discussed. There were some negotiations about the Nestings' purchasing 24 acres out of the tract which included the dwelling house for about $3,000. However, nothing came of this and the Nestings returned to Arizona, where Mr. Nesting was employed by a railroad company.

In the summer of 1942, the Akins having told Mrs. Browning that it would be necessary for them to leave, Mrs. Nesting came to Texas for a time in order to look after her sister. Some time later, and after the Akins had left, Mr. Nesting, while upon his vacation, joined his wife and Mrs. Browning. Discussions were entered into between the parties which resulted in the conveyance of the property which is under attack in this suit. It was finally agreed between the parties that Mrs. Browning would convey 94 acres of land, including the dwelling house, to her sister and that Mr. and Mrs. Nesting would live upon the premises and take care of Mrs. Browning as long as she lived. The deed was executed in pursuance of this agreement. Mr. Nesting retired and gave up his position with the railroad company and moved with his family to Texas. He also thereafter made valuable and substantial improvements and repairs upon the dwelling house here involved.

For a time after 1942, the Nestings and Mrs. Browning lived together on the place, seemingly in harmony, but then various unhappy differences arose which led Mrs. Browning to file this suit in 1945. It appears, however, that even after the suit was filed, Mrs. Browning continued to live upon the place for a part of the time. At the time of the trial, however, she was living in San Antonio with a cousin.

We do not agree with appellant's contention that the court should have submitted further and additional issues to the jury, and we therefore confine ourselves primarily to a consideration of the evidence bearing upon the issues actually submitted. It necessarily follows that if the jury's findings relating to alleged undue influence and the making of false representa-

tions have support in the evidence, the trial judge properly refused appellant's motions for an instructed verdict and judgment non obstante veredicto.

The important date involved in this litigation is September 25, 1942, the date of the execution of the deed from Mrs. Browning to Mrs. Nesting. The issue, simply stated, is, Was this deed the act of Mrs. Browning or was it the act of Mr. and Mrs. Nesting?

The evidence is highly contradictory and conflicting. For instance, Mrs. Browning's represents the Nestings as coming to Texas in 1940 and in 1942 of their own volition, and making propositions to her with reference to a transfer of the property. Mrs. Browning testified that before she executed the deed Mr. Nesting had a survey made and a deed prepared and then told her that if she refused to execute the deed he would take his wife and return to Arizona and that she would never see her sister again.

■ Nesting's version was that he and his wife came to Texas at the request of Mrs. Browning. He denied that he had made the statement that Mrs. Browning would never see her sister again unless she executed the deed. In view of the jury's findings, we must accept as true appellee's version of these transactions.

■ Mrs. Browning's physical and mental condition is material only as it bears upon her susceptibility to the exercise of undue influence. It is not contended, and the record would not support a finding that Mrs. Browning lacked the mental capacity to execute a deed. Inferences sought to be drawn from events preceding or following September, 1942, are of value only insofar as they throw light upon the mental and physical condition of Mrs. Browning at the time of the execution of the deed. For instance, from evidence of weakness of intellect in 1947 it can not be said with certainty, as a matter of law, that such weakness existed in 1942, but the inference, if any, to be drawn from such evidence is one for the jury and not for the court.

■ After carefully considering the evidence in the light of the applicable rules of law, we are of the opinion that the jury verdict must stand. It is not against the overwhelming preponderance of the evidence and the action of the trial court in overruling appellant's motion to take the case from the jury was proper.

The following are circumstances or matters in evidence admittedly viewed in the light most favorable to appellees which constrain us to adopt the view above set out.

The matter of conveying the property to the Nestings was a matter which had been under some form of consideration by Mrs. Browning for at least two years. She discussed the matter with the Nestings in 1940 and again in 1942. The evidence shows that Mrs. Browning considered various alternatives. It was suggested by one of her relatives that she sell the property and live off the money that could be realized therefrom. Mrs. Browning, however, did not want to leave the place but wanted to keep it "in the family." She had tried having a couple live with her, and this seems to have been reasonably satisfactory as long as the Akins were willing to stay. It seems that the property did not present an attractive proposition from a farming or income standpoint, and it is in evidence that it would cost Mrs. Browning around $150 a month to have someone come and live with her and take care of her. Mr. Browning had several nieces and nephews but it seems that, in 1942 at least, the plan of having her younger sister come and live with her was the one which most appealed to her. The property involved is admittedly valuable, due to some extent to the general rise in real property values and the development of Bandera County as a vacation land and tourist resort. From a financial standpoint, the proposition was an attractive one to the Nestings. On the other hand, it can fairly be said from the evidence that in 1942 Mrs. Browning, having no children, wanted this property to go to her younger sister, Mrs. Nesting, who did have children and a family. The Nestings' move from Arizona to Texas entailed considerable expense on their part. They sold their home in Arizona. Mr. Nesting gave up an active job with a railroad which he

could have kept for a number of years more. He has expended time and money upon the Bandera County property, as above pointed out. The deed was based upon a valid consideration and a cancellation of the conveyance would work certain hardships upon the Nestings.

There is considerable evidence in the record relating to events occurring after 1942. Mrs. Browning testified at the trial and complained of the treatment received by her from the Nestings. On the other hand, the appellees' testimony was to the effect that Mrs. Browning was at times unreasonable in certain of her demands and difficult to get along with. Here the evidence was highly conflicting and the issue was resolved against appellant by the jury.

While the above statement, as compared to the briefs and the statement of facts, may be regarded as extremely short, it nevertheless indicates the matters and issues of fact which we deem controlling. In our opinion the following authorities support our action in upholding the findings of the jury: Long v. Long, 133 Tex. 96, 125 S.W. 2d 1034; Cloudt v. Hutcherson, Tex.Civ. App., 175 S.W.2d 643; 42 Tex.Jur. 791; 17 Am.Jur. 916, § 44, wherein it is pointed out that, "what constitutes undue influence is a *question of fact* depending upon the circumstances of each particular case." (Italics ours.) We overrule appellant's points Nos. 1, 2, 3, 33 and 34.

The next contention presented is that the trial court erred in overruling certain exceptions directed by appellant against appellees' answer. It was alleged in the answer that appellees had incurred considerable expense in moving from Arizona to Texas; that they had sold their home in Arizona; that Mr. Nesting had given up his job, and that appellees had expended $664.-72 in moving their household furniture, equipment and supplies. According to the answer, these actions were taken as a result of the execution of the deed here involved.

The trial court correctly held that the allegations mentioned were not subject to special exception. Appellant attacked the consideration upon which the conveyance was based as being grossly inadequate, and this circumstance was relied upon as indicating undue influence. In meeting this attack appellees were entitled to plead and attempt to prove the above mentioned allegations of their answer. Appellant's points Nos. 4, 5, 6 and 7 are overruled.

We are of the opinion that the objections made to the method employed in submitting the case to the jury are not well taken.

The definition of the term "undue influence" given in connection with "Question No. 1," reads as follows:

"In connection with the foregoing question you are instructed that by the term 'Undue influence' is meant such power or control exercised over the mind and conduct of the person executing a deed, and operating on her mind at the time, as under the circumstances surrounding the parties and the transaction, she could not resist, and which amounted to moral coercion, and destroyed her free agency, and results in the execution of a deed which would not have been executed by her except for the exercise of such influence. It may consist of any constraint or urgency or persuasion by the other party whereby the will of a person is overpowered, and she is induced to do an act which she would not have done, had she been left to act freely. However the mere yielding to difficult personal circumstances not created by the other party or to natural promptings of affection, or to persuasion not sufficient to control the mind and will power and to overcome the free agency of the person executing a deed, will not of itself constitute undue influence."

Appellant particularly objects to the last sentence of this definition. This sentence, however, should be considered in connection with the one immediately preceding it. These two concluding sentences are in the nature of explanatory instructions and were properly included in the charge of the court in view of the evidence adduced upon the trial. They are descriptive in certain particulars, but their use results in a clearer concept of the meaning of the term sought to be defined. We can therefore conclude that the giving of the explanatory charges was reasonably necessary to a proper understanding of the is

sue submitted and therefore no reversible error is presented. Rule 277, Texas Rules of Civil Procedure.

Questions Nos. 2 and 3 are worded in substantial compliance with the pleadings and evidence and appellant's objections thereto are not well taken.

There was no error in refusing appellant's specially requested issues. By one of her requests, appellant suggested the following issue:

"Do you find from a preponderance of the evidence that plaintiff, Cleora S. Browning, was over-reached by defendants, Ada Mae Nesting and Charles O. Nesting, in making the deed in question?"

The term "overreaching" is in a general way synonymous with "fraud." 30 Words and Phrases, Perm.Ed., page 574. Its connotation is perhaps even broader. Obviously this issue was not a proper one. It was too general, and if objected to an affirmative answer thereto could not serve as the basis of a decree of cancellation.

The issues of undue influence and the making of a false promise with the intention of never fulfilling the same, both fraud issues, were submitted to the jury and it is sufficient to say that no other controlling issues were raised by the evidence. The refusal to submit an issue which is evidentiary in character and not controlling does not constitute reversible error. Rule 279, R.C.P. Appellant's points Nos. 22 to 32, inclusive, are overruled.

We next consider appellant's points complaining of the trial court's rulings upon the admission and exclusion of evidence, and matters similar thereto.

Appellant complains of the action of the trial court in admitting testimony to the effect that Mr. and Mrs. Nesting had offered to pay for Mrs. Browning's keep after the suit was filed and while Mrs. Browning was living in San Antonio with her cousin, Leora Rambie. It appears that for a part of the time subsequent to the filing of this suit, Mrs. Browning lived on the premises in controversy but later she left and stayed with Miss Rambie.

Upon direct examination appellant's attorney asked Miss Rambie, who had been taking care of Mrs. Browning, and the witness replied that she had. Upon cross-examination, Miss Rambie was asked if the Nestings had offered to pay for Mrs. Browning's keep. Miss Rambie replied (over appellant's objection) that they had.

Later Miss Rambie testified that nobody paid her for Mrs. Browning's keep and care. This was countered by appellees' introducing in evidence letters which they had written to Miss Rambie in which they had offered to pay Mrs. Browning's expenses.

No reversible error was disclosed by the trial court's rulings. Appellant's points Nos. 8, 9 and 10 are overruled.

The Statement of Facts discloses the following with reference to the direct examination of Joe Newcomer, appellant's witness and brother-in-law:

"Q. (by appellant's attorney) What about any deterioration following her (Mrs. Browning's) husband's death—

"(Appellees' attorney): We object to that—conclusion of the witness—

"Court: Sustain the objection.

"(Appellant's Attorney): We want out bill—can we state the answer into the record later?

"Court: Yes, sir—sure.

"(Appellant's attorney): Tell the jury what you noticed—with reference to any mental change; from that time on. A. She talked about selling the land. I recollect one time—somebody wanted to buy a piece of land from her—she said she didn't want to sell any. In a few days George White asked me if I thought he could buy another piece of land from her. I told him I didn't think so. He went to see her—next day he came back and said he didn't have any trouble getting the land from her. I couldn't sell any land for her—then she would sell it. It didn't make any difference to me whether I sold it or not. * * *

"Q. State anything else you observed— A. I don't recall anything else. * * *

"Q. Well—state—what you noticed with reference to any continuous decline physically and mentally—from the time of her husband's death—on down. A. Oh— well—there for a good little while—it

seems like she was might—in mighty poor health—I don't know—she could not tell what she wanted to do or would do—she would talk one way and do another—"

■ The trial court properly held that the question as to "deterioration" was not sufficiently specific. It further appears that Newcomer testified to all that he knew about Mrs. Browning's mental and physical condition after the death of her husband. The matters set out in the bill of exceptions showing what Newcomer would have testified to had he been permitted to answer the general question as to "deterioration" are substantially the same as those disclosed by his answers to more specific questioning as above set out. We conclude that no reversible error is shown and appellant's point No. 11 is overruled.

■ Upon cross-examination, Mrs. Browning was asked whether or not she had made a contract with her attorneys to represent her in this case. The court sustained an objection to the question and instructed the jury not to consider the same. Even if the question be considered improper, we are of the opinion that the instruction rendered the error harmless. Appellant's point No. 12 is overruled.

Appellees' witness Albert West had testified that he had sold a drug store to Mr. Nesting and his son and taken notes for the purchase price thereof. Over appellant's objections, West testified that he had sold the notes and no longer owned them.

■ In our opinion, this testimony was properly admitted. Appellees were entitled to show that at the time of the trial they were in no way financially obligated to the witness and that the witness had no pecuniary interest in the outcome of the suit. We overrule appellant's point No. 13.

■ Appellees' counter point successfully answers appellant's points Nos. 14 to 20, inclusive, which are accordingly overruled. The controlling issues in this case were those of undue influence and the making of a promise with the then intention of not fulfilling the same. There was no independent issue raised by the evidence as to the mental capacity of Mrs. Browning. Her condition of mind was material only in considering her susceptibility to undue influence; for, as stated in Barry v. Graciette, Tex.Civ.App., 71 S.W. 309, 310: "An influence that would totally destroy the volition of a person mentally or physically weak might not produce any effect upon a person otherwise endowed." The trial court allowed appellant great latitude in presenting evidence relating to the mental characteristics of both appellant and appellees, as well as evidence relied upon to show that appellant had suffered "a continuous decline, physically and mentally—from her husband's death—on down" to the date of the execution of the deed. It was not error to allow the appellees a similar latitude in rebutting appellant's case.

■ Appellant, by her point No. 21, contends that the trial court should have specially instructed the jury that the pleadings in the case could not be considered as evidence. Upon the direct examination of Mr. Nesting, appellees' attorney, in his questioning, referred to and read a part of the answer. From the record of this occurrence it does not appear that the jury could have been confused and led to mistake the pleadings for evidence. The requested instruction was unnecessary and the point presents no reversible error.

What has been said disposes of all of appellant's points. The case was essentially one for the jury as the trier of fact issues. It appears that the case was properly tried and fairly submitted. The judgment appealed from is accordingly affirmed.