### ANCHOR CAS. CO. v. PATTERSON.
### No. 2843.

Court of Civil Appeals of Texas. Eastland.
March 23, 1951.

Rehearing Denied April 13, 1951.

On Second Motion for Rehearing
May 4, 1951.

Further Rehearing Denied June 1, 1951.

Smith, Eplen & Bickley, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

COLLINGS, Justice.

This is a Workmen's Compensation case brought by Jenna Lee Patterson by her father, R. W. Patterson, as next friend, against the Anchor Casualty Company as the insurance carrier for Abilene Hotel Corporation, seeking compensation for an injury alleged to have been sustained while she was in the course of her employment for such hotel corporation in the laundry of the Windsor Hotel at Abilene, Texas. Appellee alleged that while she was working as an employee of such laundry she was instructed to crawl into an electric extractor for the purpose of cleaning it or doing something to assist in the operation of same, and that while she was inside the extractor of the motor started in some manner and the extractor was put in motion; that she was thrown violently about and thereby received the injuries complained of. Appellant denied that appellee suffered any injury; denied that any one in authority in the laundry instructed her to crawl into the extractor, and alleged that if she did so crawl into the extractor and was injured therein, that such injury did not arise out of her employment.

The jury found that appellee, Jenna Lee Patterson, was instructed to crawl into the extractor; that she did crawl into same; that the extractor was put into motion; that she sustained injury thereby, and that such injury was sustained in the course of her employment with the Abilene Hotel Corporation. Based upon the jury findings, judgment was entered for appellee for 225 weeks of compensation at the rate of $9 per week. Anchor Casualty Company brings this appeal.

Appellant urges in various points that the court erred in overruling its motions for

instructed verdict and judgment non obstante veredicto and in overruling its exceptions to the court's charge because it is contended by appellant that the evidence conclusively shows that plaintiff's injuries resulted from "horseplay or fooling" in which appellee took part and did not arise out of or in the course of her employment.

Appellee, Jenna Lee Paterson, was 14 years of age at the time of the alleged injury and at such time was on her employer's premises and place of business during ordinary working hours. She, together with other women employed, worked from time to time at different jobs around the laundry. Appellee testified that just before she got into the extractor that she, her mother and L. L. Bryant, who was the manager of the laundry, were standing around waiting for some clothes to get out of the washer to be put in the extractor; that while they were so standing around, Mr. Bryant said to her, "O. K. get into the extractor and see if you can lie down." She stated that she asked Bryant if he would not turn it on and he said that he would not. In answer to a question as to why Bryant told her to get into the extractor, she said: "I had an idea that he was just playing with me, * * * cutting up, * * * or fooling." She testified that she thought he was "just trying to have some fun * * * I knew it was dangerous, but I didn't think he would turn it on, * * * that he had more sense than that, but he went ahead and turned it on."

Although appellee first indicated that when Bryant told her to get into the extractor, she did not think it was "something in connection with her duties," she thereafter stated that she did not understand the question and testified that it was in connection with her work. She stated that he was her boss and that she did whatever he told her to do; that whenever he told her to work at a certain spot she would do so until he told her to go somewhere else. She was unable, however, to tell what she was doing in connection with her work by crawling into the extractor and when asked about it stated: "I didn't know what he meant."

The manager, L. L. Bryant, testified that he had never tried to have any fun with anyone by telling them to get into the extractor. When he was asked if he knew anything about appellee getting into the extractor and if he pushed the button and started the machine, and that she was injured thereby, he testified that he did not know anything about it.

Appellee's father, R. W. Patterson, testified that Bryant told him that "He asked her to get in there and she got in and he pushed this button on this 'abstractor' and he said he didn't think it would start because the lid was not plum down on it * * *. He said he hated it."

In order to recover compensation for her injury, appellee had the burden of proving such injury was "sustained in the course of her employment." It is uncontradicted that at the time of her injury, appellee was in the employ of Abilene Hotel Corporation; that she was in their place of business where she performed the duties required of her and that the injury was received during regular working hours. It is thought that appellee was "in the course of her employment" while she was standing around waiting for the clothes to get out of the washer to be put in the extractor. The question to be determined is, whether she was in the course of her employment when at the suggestion or order of L. L. Bryant, she "crawled" into the extractor. We think it must be assumed that Bryant was engaging in "horseplay" or "fooling" when he told appellee to get into the extractor. Appellee's right to recover compensation under such circumstances depends upon whether she also engaged in such horseplay. An injury caused by Bryant's horseplay in which appellee did not participate would be compensable. If, however, she knowingly and willingly engaged in such, she departed from the course of her employment and the injury received as a result thereof is not compensable under the Workmen's Compensation Act. Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, 46 A.L.R. 1137 (Sup. Ct.); Standard Accident Ins. Co. v. Stana-

land, Tex.Civ.App., 285 S.W. 878; Richardson v. Texas Employers' Ins. Ass'n, Tex. Civ.App., 46 S.W.2d 439; Texas Indemnity Ins. Co. v. Dunlap, Tex.Civ.App., 68 S.W.2d 664.

As we see it, the matter hinges upon the question of whether appellee got into the extractor in the belief that she was complying with a command of Bryant in connection with her duties in the laundry, or whether she knew that Bryant was engaging in horseplay, and with such knowledge, willingly participated therein.

Appellee was only 14 years of age and stated that she "didn't know what he (Bryant) meant" when he told her to get into the extractor and she also testified that it "was something in connection with her duties." The above evidence may in some degree, tend to show that appellee thought the instruction by Bryant was in connection with her work or at least that she was uncertain and confused and in such state uncertainty, was simply obeying orders of a superior without definite knowledge of or intention to engage in the horseplay. When, however, such testimony is considered together with appellee's other testimony to the effect that "I had an idea he was just playing with me * * * cutting up * * * or fooling", we feel that the general effect of her entire testimony is too indefinite and uncertain to serve as a satisfactory basis for the judgment. The inconsistency of appellee's testimony is such that it would probably be conclusive against her if she were an adult person of mature intellect, and the possibility of confusion and uncertainty on her part entirely absent from the record. In any event, the evidence is not, in our opinion, sufficient to support the finding that appellee's injury was sustained in the course of her employment with the Abilene Hotel Corporation.

■ Appellant's second point complains of the action of the court in refusing to give its requested special issue No. 3 in substance, as follows: "Do you find * * * that Jenna Lee Patterson crawled into the extractor * * * for the purpose of cleaning it or doing something to assist in the operation of the same?"

The court did not err in refusing this issue. It was not controlling. The fact inquired about was evidentiary and was material, if at all, to the controlling issue of whether appellee's injury was sustained in the course of her employment. Such controlling issue was submitted to the jury. Browning v. Nestling, Tex.Civ.App., 219 S.W.2d 712 (Ref.N.R.E.); Aetna Casualty & Surety Co. v. Isensee, Tex.Civ.App., 211 S.W.2d 613 (Ref.N.R.E.); Ohlen v. Hagar, Tex.Civ.App., 212 S.W.2d 253 (Ref.N.R.E.); Meadolake Foods, Inc., v. Estes, Tex.Civ.App., 218 S.W.2d 862 (Ref.); Texas Employers' Ins. Ass'n v. Brumbaugh, Tex.Civ.App., 224 S.W.2d 761 (Ref.N.R.E.).

■ Complaint is also made of the refusal of the court to submit appellant's requested special issue No. 5 which inquired if Jenna Lee Patterson received the injury in question while voluntarily engaged "in an act without the course of her employment." There was no error in the refusal of the court to submit this issue. Special issue No. 5 of the court's charge inquired if appellee received the injury while " * * * in the course of her employment." The court was not required to submit the same issue both affirmatively and negatively. Little Rock Furniture Mfg. Co. v. Dunn, Tex.Sup., 222 S.W.2d 985 (Sup.Ct.).

■ We are likewise of the opinion that the court did not err in refusing to submit an issue requested by appellant inquiring if appellee's injury "arose out of her employment." This issue had to do with the question of whether appellee's injury was sustained in the course of her employment, which question was properly submitted to the jury in the court's main charge. Lumbermen's Mut. Casualty Co. v. Zinn, Tex. Civ.App., 220 S.W.2d 906 (Ref.); Gulf, C. & S. F. Ry. Co. v. Jones, Tex.Civ. App., 221 S.W.2d 1010 (Ref.N.R.E.).

■ Appellant's fifth point urges that the court erred in refusing its requested special instruction No. 3 which was as follows: "You are instructed that an injury 'arises out of the employment' when it reasonably appears from all the facts

and circumstances that there is a causal connection between * * * the conditions under which the work is required to be performed and. the resulting injuries, that is, when the injury results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of the work in which the employee is engaged."

The court's charge to the jury gave the following definition of "injury sustained in the course of employment:"

"(D) By the term 'Injury sustained in the Course of Employment' is meant injuries of every kind and character having to do with and originating in the work, business or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, and such injury as has to do with, and arises out of the work or business of the employer, whether upon the employer's premises or elsewhere, when, such injuries result from a risk or hazard which is necessarily or ordinarily inherent in or incident to the conduct of such work or business.

"In this connection, you are further instructed that an injury is not received in the course of employment where the employee sustains same by reason of his voluntarily turning aside from his employment and willingly engaging in some act of horseplay or fooling, which is not in furtherance of any duty which he owed to his employer."

The court's definition of the term follows the statute, art. 8309, Sec. 1, Subdivision 5, Vernon's Annotated Revised Civil Statutes of Texas. In our opinion, the requested instruction, although correct, would add nothing to the definition given by the court. The effect is substantially the same. This is made apparent by the fact that the portion of the requested charge coming after the words, "that is" which indicates that such portion is simply another way of saying what has just been said, is almost identical with language contained in the court's instructions. The court did not err in refusing to give such requested definition and instruction.

For the reasons stated, the judgment of the trial court is reversed and remanded.

## On Second Motion for Rehearing.

On second motion for rehearing, appellee contends that our action in reversing and remanding this case on the ground that the evidence was not sufficient to support the jury finding that appellee was in the course of her employment at the time of her injury is error because the question of the insufficiency of the evidence was not raised by appellant's brief and is, therefore, not before this court.

An examination of appellant's points indicates that the question of the sufficiency of the evidence was not raised. All of appellant's points which are directed toward the evidence complain that there was no evidence that appellee's incapacity arose out of or within the course of her employment but that the evidence is conclusive that it resulted from "horse play or fooling" in which appellee took part. Since the question of the insufficiency of the evidence was not raised, we are not at liberty to pass on that question and withdraw so much of the original opinion as dealt therewith. Liberty Film Lines, Inc., v. Porter, 136 Tex. 49, 146 S.W.2d 982 (Sup.Ct.); Wisdom v. Smith, 146 Tex. 420, 209 S.W. 2d 164, (Sup.Ct.), and cases there cited.

As heretofore indicated, we are of the opinion that there was some evidence that appellee did not willingly and voluntarily participate in the horse play of Bryant when he told her to get into the extractor. She testified that she "didn't know what he meant." The effect of this statement, considered in its most favorable light to appellee, was that she did not know he was engaging in horse play or at least that her understanding of the fact was so indefinite that it could not be said that she willingly and voluntarily engaged therein.

Appellant contends, however, that Jenna Lee Patterson's own testimony to the effect that "I had an idea that he was just playing with me * * * cutting up * * * or fooling" conclusively established that she took part in the horse play when she

got into the extractor. Such testimony would be conclusive against appellee except for her youth and other facts and circumstances in the case which indicate an uncertainty on her part as to Bryant's purpose in giving her the order in question. She was employed by the hotel corporation. She was at their place of business where she performed the duties required of her. Bryant was her boss. She was obliged to follow his instructions in anything pertaining to her work. She has testified concerning the order that he gave her that she "didn't know what he meant." Bryant himself denied any knowledge of either the horse play or anything in connection therewith. The testimony of appellant, when considered in the light of all the circumstances, is such that in our opinion, it cannot be said, as a matter of law, that appellee willingly and voluntarily engaged in the horse play.

Since there is evidence that appellee did not engage in the horse play and since her testimony to the effect that she had an idea that Bryant was "fooling" is not, under the circumstances, conclusive that she did willingly engage in the horse play, appellant's points concerning the evidence are not well taken and we are of the opinion that no error of the trial court is presented for our consideration.

For the reasons stated, the judgment of the trial court is affirmed.