No. 41,184

O. L. CORWINE, *Appellee*, v. MARACAIBO OIL EXPLORATION COR-
PORATION, *Appellant*.

(334 P. 2d 419)

Opinion filed January 24, 1959.

*John B. Pierson,* of Ottawa, argued the cause, and *Robert H. Miller,* of Paola, was with him on the briefs for the appellant.

*Karl V. Shawver, Jr.,* of Paola, argued the cause, and *Karl V. Shawver,* of Paola, was with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal in an action instituted to recover damages resulting from pollution of plaintiff's stock pond caused by escaping oil, salt water, and refuse from defendant's adjoining oil lease operations. A verdict was returned and approved, and judgment for actual and punitive damages in favor of plaintiff was entered by the trial court. Defendant filed posttrial motions to set aside the general verdict and answers to special questions, to remit and reduce the actual and punitive damages, and for new trial. All of the foregoing motions were overruled by the trial court and defendant appeals therefrom.

On August 5, 1956, and for some years previous, plaintiff rented a 520 acre farm on which he raised Angus and Hereford beef cattle. Defendant operated an oil and gas lease on the same farm and also leased three of the 520 acres for a plant site adjoining plaintiff's pasture and large stock pond. The plant site was separated from plaintiff's pasture and pond by an embankment. The natural slope of the ground was across defendant's plant site and toward this embankment. Any surface water, oil, salt water or refuse accumulating above the embankment would run through a corrugated iron tube of a type commonly seen along roadways and under culverts and called a *tin whistle*, which permitted proper drainage from the land into the stock pond of plaintiff.

It is admitted that sometime prior to 7:45 a. m. on August 5, 1956, oil accumulated on defendant's lease above the embankment, flowed by gravity through the tin whistle onto plaintiff's land and into his stock pond. As soon as defendant's employees discovered the source of the oil, repairs were started and plaintiff was immediately notified. Some of plaintiff's cattle were in the pond drinking water and oil, all of them had oil on their bodies and there were indications they had drunk some of the oil. Plaintiff obtained the help of five neighbors and by 10:00 a. m. all of his cattle, consisting of forty cows and twenty-five calves, were in the barn. From 10:00 a. m. to 2:00 p. m. plaintiff's veterinarian administered medication to all the cattle to alleviate cramping, scouring, passing of oil and resulting dysentery.

In addition, the evidence amply disclosed that there had been other similar occurrences and that plaintiff had complained many times about defendant's maintaining the tin whistle at the base of the

embankment and that each time he had requested defendant's general manager or other employees and agents to change or plug the tin whistle to prevent just such future incidents as the one involved in this appeal. On four of these previous occurrences, damages had been paid by defendant to plaintiff but notwithstanding this knowledge and experience, defendant did nothing to avoid damaging the plaintiff again.

At the close of the evidence defendant requested the following instruction:

"You are instructed that you should not take into consideration remote or speculative damages but you may take into consideration only actual damages which are real, imminent and reasonable to apprehend."

The foregoing was refused but the trial court did submit the following istruction:

"(5) If you find for the plaintiff you will find for him in such sum as will reasonably compensate him for his damage sustained and you will take into consideration the/any loss of weight of his cattle, the loss of weight of the calves, the loss of calves, medical expense, extra feed and care and such items as were the direct and proximate cause of the escape of the oil and salt water and refuse from the defendant's wells."

Defendant objected to instruction No. 5 and in answer the trial court stated:

"I think I will just add the words to Number 5, 'you cannot allow for speculative damages,' and refuse your requested instructions." (Our emphasis.)

However, the longhand annexation to instruction No. 5 included only the words, "You cannot allow for speculative."

Defendant then requested a special interrogatory,

"Q. Was the oil of which the plaintiff complains, discharged intentionally by defendant . . .,"

but this request was refused.

Plaintiff had sought to recover $3,900 actual and $5,000 punitive damages and the trial court instructed the jury that its verdict could not exceed these amounts. The jury returned a verdict for plaintiff for $2,300 actual and $1,000 punitive damages and answered two special interrogatories as follows:

"Q. Do you find from a preponderance of the evidence that the defendant wilfully, intentionally and wantonly violated the law with reference to the escape of oil from the vicinity of its tanks and lines? A. Yes.

"Q. If your answer to the foregoing question is 'yes,' then state how and in what particulars such violation occurred. A. Negligence."

The trial court approved the verdict and entered judgment

thereon. The defendant filed the afore-mentioned posttrial motions which were overruled by the trial court and hence this appeal by defendant.

We shall consider only the four questions argued by the parties in their briefs. The first is whether there was substantial competent evidence to support the feature of punitive damages in the verdict. The appropriate rule of law was recently reiterated in *Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130:

"The law does not require a specific finding of an intentional and ruthless desire to injure in order to sustain an award of punitive damages. The burden of proof is sustained, once the injured party shows such gross neglect of duty by the wrongdoer as to evince a reckless indifference of the rights of others." (Syl. ¶ 5.)

When the above rule is applied to the record before us, it is obvious there was substantial competent evidence to support the verdict.

The second question proposed by defendant—that it was error for the trial court to refuse to submit its requested special question—is answered in the negative by the above rule in the Watkins case. Plaintiff states in his brief that the defendant was not accused of intentionally discharging oil onto plaintiff's land. On the record before us, it was not a proper question to be submitted to the jury and the tiral court did not err in refusing so to do.

The applicable parts of G. S. 1957 Supp. 55-121, controlling the situation we have before us, read:

"It shall be unlawful for any person, having possession or control of any well drilled . . . to permit salt water, oil or refuse from any such well, to escape by overflow, seepage or otherwise from the vicinity of such well. . . ."

The third error contended by defendant is that the answers to the two special questions, quoted above, are in conflict with each other and are so inconsistent with the general verdict as to entitle defendant to a new trial. We cannot agree with defendant's contention that our record presents a situation comparable with that in *Tinberg v. Kansas Turnpike Authority*, 181 Kan. 139, 141, 310 P. 2d 217, where the special findings by the jury were so inconsistent with each other and the general verdict as to require the granting of a new trial. Here the answers to the special questions show that the jury, on the conflicting phases thereof and the issuable facts, accepted and believed plaintiff's testimony and rejected that of defendant, which is not an unusual activity on the

part of a jury. The same situation obtained in *Krehbiel v. Goering,* 179 Kan. 55, 59, 293 P. 2d 255. Plaintiff directs our attention to the failure of defendant to object to the verdict or answers to the special questions until after the jury was discharged whereby such objections were waived, and cites *Banbery v. Lewis,* 173 Kan. 59, 244 P. 2d 202, in which it was stated:

"The record fails to disclose appellant made any objection to the verdict until after the jury was discharged. In that situation he is deemed to have waived any objections he might have thereto and cannot urge them for the first time upon a motion for a new trial or on appeal. [Citations.] This, it should be added, has long been the rule in this jurisdiction with respect to answers to special questions. [Citations.]" (pp. 68, 69.)

However, when the entire text of that portion of the opinion in the Banbery case is studied, one can only conclude that such objection goes to the sufficiency, or clearness, of the verdict and the answers to the special questions rather than being an attempt to deprive a party of raising the proposition of the inconsistency of the jury's special findings or as to any inconsistency between the special findings and the general verdict. The second special question refers to and is a part of the first and considering the two questions and answers together, we have a wilful, intentional and wanton violation of G. S. 1957 Supp. 55-121 by defendant through its agents and employees who possessed knowledge of previous results when leaks or breaks had occurred. We, therefore, cannot find support for defendant's complaint that the trial court erred in refusing to grant defendant a new trial. If it was of such value to defendant to maintain the tin whistle to drain water or any other substances so its operations above the embankment would not be flooded, then defendant cannot contend that its violation of the statute failed to evince a reckless indifference of the rights of plaintiff. Defendant's employees knew what would happen as soon as they discovered the leak and they immediately notified plaintiff, who acted promptly to do all he could to save his cattle.

The trial court's instructions give rise to defendant's next claim that the trial court erred in its charge to the jury on damages, as above set out in instruction No. 5. Defendant insists that the only theory of damages is the difference between the market value of the cattle before and after the incident, but this court established its yardstick for determining damages in this type of case in *Phillips v. Empire Oil and Refining Co.,* 131 Kan. 516, 292 Pac. 782, where it stated,

"There is and can be no controversy over the proposition that anyone sustaining substantial injury to his live stock by the pollution of a stream flowing through his pasture from which the live stock drank the polluted water may maintain an action against the party causing the pollution and recover any actual damages thereby sustained. [Citations.]" (p. 517.)

When instruction No. 5 is considered with all the other instructions, or if it were considered only by itself, we cannot say that its submission was reversible error sufficient to justify the granting of a new trial. While, as contended by defendant, it could have been more artfully drawn so far as the longhand annexation is concerned, the jury must be credited with sufficient knowledge to understand that the word "damages" should have been written in also and if its members did not realize that omission from the very nature of the added words, they could apply only to the damages described in the first portion of the instruction. For these reasons, we cannot say the trial court erred in its theory of and instruction on damages.

The final contention of error is on the excessiveness of the verdict and failure of the evidence to support the amount. Defendant contends there was a veterinary bill, mineral supplements and special feed costs, and that the balance was speculation. The record does not so reflect and under the instruction as to the limitations of the jury's verdict, together with the high and low amounts included in plaintiff's testimony as to the amount of his damages, it is impossible to determine that the jury went beyond the high limit. Indeed, the amount of actual damages was well within the high amount. We have not overlooked the fact that plaintiff stated he was not asking anything for the extra work he did, but we have not found, nor has defendant pointed out, where the jury considered it. The verdict of the jury was proper and the trial court did not err in refusing (1) to set it aside (2) to require a remittitur of a part of it or (3) to grant a new trial to defendant.

Plaintiff calls our attention to the Oklahoma rule on damages in this type of case as set out in *Gulf Oil Corporation v. Miller,* 198 Okla. 54, 175 P. 2d 335. For all practical purposes the rule there stated is the same as the one enunciated in our Phillips case, *supra,* and we, therefore, do not deem it necessary to discuss it further.

Judgment affirmed.