No. 42,172

GALYN GANO and JEAN GANO, *Appellees*, v. BROOKS HALL, *Appellant*.
(363 P. 2d 551)

Opinion filed July 8, 1961.

*William B. Ryan,* of Norton, argued the cause and was on the briefs for the appellant.

*Marion W. Chipman*, of Hill City, argued the cause, and *W. H. Clark* and *Kenneth Clark*, both of Hill City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: The plaintiffs (appellees), Galyn and Jean Gano, brought this action against the defendant (appellant), Brooks Hall, to recover damages to their land and sheep resulting from the pollution of a stream on the land caused by the escape of crude oil, salt water and other refuse from defendant's oil lease operations. A verdict was returned and approved and a judgment for actual damages was entered by the trial court in plaintiffs' favor. From an order overruling defendant's demurrer to plaintiffs' evidence and from other post-trial motions, defendant appeals.

Plaintiffs' petition alleged that defendant wrongfully permitted crude oil, salt water and other refuse to drain from his wells and tanks across their pasture land and into the stream thereon, thus polluting the water and rendering it unfit for their sheep to drink; that as a result of such pollution ten of the lambs died and the remaining 107 became ill and did not fatten as they otherwise would have done, and the 147 ewes failed to breed or to conceive and were worthless as breeding stock, and that plaintiffs were put to the expense of additional feed and labor. Plaintiffs asked for damages for the loss of their anticipated profits on the lambs, for the damage to the ewes as breeding stock and for the added expense to which plaintiffs were put in providing extra feed and labor because of the pollution of the stream. The issues were joined and the case proceeded to trial.

Defendant admitted in his opening statement that oil and salt water had escaped from his pipe lines and had gotten into the stream, and that plaintiffs were entitled to recover proved damages. The evidence reveals that on February 22, 1959 plaintiffs were pasturing "147 ewes and 114 head of lambs" on the mentioned land, at which time plaintiffs discovered oil on their flock of sheep and found that the majority of them were sick and "scouring" and some of the lambs were in the last stages of dying (ten of them did die). The following morning plaintiffs found oil in the stream and discovered that it came from the wells operated by defendant.

The evidence also discloses that after the sheep became ill, a reliable veterinarian informed plaintiffs there was nothing with

which to doctor the sheep. The sheep thereafter "shrank awful bad." Out of the 147 ewes only forty-six lambed, and only twenty to twenty-five of the lambs lived. The ewes were no longer useful as breeding stock and could only be sold as slaughter ewes at four to five cents a pound. They would have been worth $25 to $30 a head as breeding stock.

A veterinarian testified that sheep which have access to and consume oil and salt water experience a severe diarrhea which causes a marked and rapid weight loss; that the digestive tract of the animals would be affected in such a manner they could no longer absorb food materials efficiently; that the animals would not regain weight in a normal manner, and that the ewes would be in very poor condition for breeding purposes and a large percentage of them would fail to come with lamb. A sheep specialist testified that healthy lambs of the same age as those of plaintiffs would weigh between ninety-five to 105 pounds at market time.

The evidence further discloses that when the lambs drank from the polluted stream they weighed fifty-five to sixty-five pounds each; that on June 1, plaintiffs marketed forty-one head, twenty of which averaged 75¾ pounds and brought $24 a hundred, and twenty-one of which averaged sixty-six pounds and brought $18.50 a hundred. On July 13; plaintiffs marketed fifty head of lambs which averaged sixty-five pounds and sold for $18 a hundred. The lambs should have each weighed approximately 100 pounds at market time. The evidence further reveals the necessity for and the cost of the extra feed and labor incurred by plaintiffs in an attempt to get the lambs ready for market. The defendant offered no evidence.

The trial court instructed the jury on the theory of the case under the pleadings and the evidence. Instruction No. 3 reads:

"You are instructed that the defendant in this case had admitted in open court that he is liable to the plaintiffs in damages on account of the fact that crude oil and salt water escaped from his oil wells over and through the plaintiffs' land, and it will .thus not be necessary for the jury to decide that question. The plaintiffs claim damages to two acres of their land, for the loss by death of lambs, the loss by shrinkage of ewes and lambs, the loss of wool, the loss of lambs because of the failure of the ewes to breed, the loss to value of the ewes as breeding stock, and the loss of labor and time by the plaintiff, Gayln Gano. The defendant is contesting the amount of damages claimed by the plaintiffs, and, therefore, the only matters for the jury to decide in this case are: What actual damage was suffered by the plaintiffs, the amount of such damages as proven by the preponderance of the evidence in this case; whether the plaintiffs are entitled to punitive damages from the defendant, and the amount of such punitive damages."

Instruction No. 5 reads in pertinent part:

"You are instructed that plaintiffs are asking damages due to the alleged shrinkage of one group of sheep and shrinkage and loss of weight to another group.

"The burden of proof in the first instance rests upon plaintiffs to establish by a preponderance of the evidence that the alleged shrinkage and the alleged shrinkage and loss of weight, if any, in said sheep, occurred as alleged in the plaintiffs' petition, and, secondly, that said shrinkage and loss of weight was caused by the alleged wrongful acts of the defendant.

"If you find from a preponderance of the evidence, (1) that the water on the land was polluted and further find by a preponderance of the evidence that said sheep drank said water and were injured thereby, causing shrinkage and loss of weight, the plaintiffs could recover for such loss, if any, and, their recovery, if any, would be measured by other instructions given you by the Court herein."

Instruction No. 6 reads as follows:

"You are instructed that plaintiffs make claim for damages for loss by reason of the death of sheep, and also claim damages for shrinkage and loss of weight to their sheep. In the event you find from the evidence and by a preponderance thereof that the plaintiffs suffered damages to their sheep by reason of the wrongful act or acts of the defendant, then the measure of damages in such cases is the difference between the fair market value of the said sheep immediately before such alleged injury and the fair market value immediately thereafter."

There was no objection to the instructions and they became the law of the case.

The jury returned a verdict in favor of the plaintiffs for actual damages only and returned its answers to the special questions submitted by the court in which plaintiffs were allowed damages for the dead lambs, for the loss of weight on the lambs sold in June and July of 1959, for the loss of wool on the lambs, for the difference in the fair market value of the breeding ewes prior to their injury and of the ewes after their injury, and for the additional feed and labor necessary in caring for the sheep, as well as damages for the loss of the use of the two acres of land. The trial court entered judgment on the verdict, from which defendant appeals.

Defendant complains of the court's instructions Nos. 3 and 5, which applied the measure of damages to the shrinkage and loss of weight caused the lambs by the drinking of the water from the polluted stream. He contends that the measure of damages should have been the difference between the fair market value of the lambs immediately before the alleged injury and the fair market value of the lambs immediately thereafter, as set forth in instruction No. 6.

We think the defendant puts too narrow an interpretation on instruction No. 6. There was no injury immediately after the lambs drank the polluted water. They did become ill and plaintiffs used every effort to restore them to health and to increase their weight by special feeding and care, but when plaintiffs found it impossible to do so, they sold the lambs. The damages thus became fixed. Instructions Nos. 3, 5 and 6 must be read and considered together. The case was tried and submitted to the jury upon the theory of the recovery of anticipated profits which had been lost due to the loss of weight by the lambs caused by their drinking the polluted water. It must be remembered that defendant made no objection to these instructions and he therefore has no right now to complain.

Under plaintiffs' evidence there was nothing particularly speculative or uncertain about their loss of profits. They had the lambs, the grass for them to eat and the water for them to drink. If the lambs had gained as the evidence showed they would have gained had the stream not been polluted by defendant, they would have sold for a certain market price; whereas, because of the pollution of the stream the lambs were prevented from making a normal gain in weight and thus brought a much lower market price.

There can be no controversy over the fact that anyone sustaining substantial injury to his livestock by the pollution of a stream flowing through his pasture from which the livestock drank polluted water may maintain an action against the party causing the pollution and may recover any actual damages thereby sustained (*Corwine v. Maracaibo Oil Exploration Corp.*, 184 Kan. 151, 334 P. 2d 419; *Phillips v. Empire Oil and Refining Co.*, 131 Kan. 516, 292 Pac. 782; *Manhattan Oil Co. v. Mosby*, 72 F. 2d 840, 846; 15 Am. Jur., Damages, § 149, p. 556). The growth of the lambs and their increase in weight under ordinary conditions of care, pasturage and water are elements entering into the common business experience and observation of persons engaged in one of the important industries of our state and are ordinarily susceptible of reasonable estimate and calculation by those who have had such experience (*Skinner v. Gibson*, 86 Kan. 431, 121 Pac. 513). In the instant case the loss of weight due to the drinking of the polluted water by the lambs was testified to by experts in the field of sheep raising.

Defendant contends that the plaintiffs failed to prove the sheep actually drank from the polluted stream. There is no merit to this

contention. Defendant admits that the water was polluted. The record discloses ample evidence, both direct and circumstantial, to show that the sheep drank from the stream polluted by the oil and salt water and that as a result they became ill and were "scouring" and passing an oily substance.

Defendant asserts that the evidence was insufficient to support the findings and the judgment. No useful purpose would be gained by detailing the evidence on each specific finding. Suffice it to say that we have examined the record and find that the findings are supported by substantial and competent evidence. The other contentions by defendant have been considered and are found to be without merit. The judgment of the trial court is affirmed.

It is so ordered.