Joseph E. NEWMAN, also known as
J. E. Newman, Appellant,

v.

Everett NELSON and Geral J. Bannon,
Appellees.

No. 7847.

United States Court of Appeals
Tenth Circuit.

Sept. 14, 1965.

Arthur W. Skaer and Alvin D. Herrington, Wichita, Kan. (William Tinker, Hugh P. Quinn, Richard T. Foster, Lee H. Woodard and William A. Hensley, Wichita, Kan., with them on brief), for appellant.

Fred R. Vieux, Augusta, Kan., and James B. McKay, Jr., El Dorado, Kan. (J. B. McKay, El Dorado, Kan., with them on brief), for appellees.

Before MURRAH, Chief Judge, and PICKETT and SETH, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a diversity action judgment on a jury verdict awarding actual and punitive damages for pollution of plaintiff's stock pond by escaping crude oil from defendant's oil lease operations.

In the pre-trial order the Court ruled that the case "was not one of negligence, but one of nuisance"; that "the defenses raised by the defendant of reasonable

conduct, contributory negligence and assumption of risk were without basis" on the claim for actual damages; but "that the reasonable and prudent conduct of the defendant * * * might be shown * * * as a defense to the plaintiff's claim for punitive damages". The case was tried and submitted to the jury on that theory.

On appeal the defendant-appellant does not deny that Kansas adheres to the doctrine of Fletcher v. Rylands, L.R. 1 Exch. 265, i. e. liability without fault.[1] Nor does he seem to contend that this is not a Fletcher v. Rylands case for compensatory damages. He does emphatically contend that the trial court should have directed a verdict on the issue of punitive damages for lack of any evidence whatsoever to support it. We agree.

The facts relied upon to support the claim for actual and punitive damages are that the appellant was the owner of a producing oil and gas lease covering 160 acres in Butler County, Kansas. The surface was used by the appellees as part of a joint-venture cattle operation under an agricultural lease.

At all times, the appellant was using at the well site a bolted storage tank to hold crude oil until a sufficient quantity had accumulated for gauging and sale. In the latter part of October, 1961, a small leak occurred in the bottom of the tank. No oil escaped to the surrounding surface, and the tank was repaired. About three weeks later (November 12, 1961), however, a hole developed in the tank bottom permitting oil to escape and seep into a nearby pond used by the appellees' cattle. The cattle were exposed to the polluted pond and were affected thereby. There was evidence that at the time of pollution the tank was leaking and the equipment was "old and dilapidated". Over the objections of appellant the Court admitted evidence to the effect that approximately two

years after the incident complained of the tank was still leaking oil in several places; that it had been "patched up" and was in a dilapidated condition. Pictures of the area depicting the surface, the tank battery and the pond in June or July of 1963 (about two years after the incident) were offered and received in evidence. But, there was no proof that the pond was polluted prior to or after the incident complained of in November, 1961, or that the cattle were thereafter exposed to polluted water.

The post-incident testimony was admitted under specific and repeated instructions to the effect that the occurrences after the date of the incident were admitted solely and only in support of the claim for punitive or exemplary damages and that any events happening after November 12, 1961, "wouldn't be proper for you to consider in a determination of whether plaintiffs (appellees) are entitled to recover actual damages".

In support of the defense of "prudent conduct" to the claim for punitive damages the appellant was permitted to prove that bolted tanks were in common use for this type of operation; that when the leak was first detected in October, 1961, he immediately erected an electric fence around the tank and employed a tank company to repair the leak; that the tank was guaranteed "to hold for twelve to eighteen months"; that when the leak recurred, two or three weeks later, resulting in seepage and pollution of the pond, he erected an electric fence around the pond and later replaced it by a permanent barbed wire fence; that he then employed another tank company to install a new bottom in the tank. There was proof to the effect and it was conceded that in March of 1962 (less than a year after the incident) the water in the pond was not deleterious and in fact was fit for livestock and fish consumption.

On motion for directed verdict the Court was inclined to believe that there may be some evidence from which the

1. See Helms v. Eastern Kansas Oil Co., 102 Kan. 164, 169 P. 208, L.R.A.1918C, 227; State Highway Comm. v. Empire Oil and Refining Co., 141 Kan. 161, 40 P. 2d 355; Frazier v. Cities Service Oil Company, 159 Kan. 655, 157 P.2d 822.

"jury might be able to determine that the activities of the defendant did evince a situation where he had a total disregard for the rights of others".

No complaint is made of the instructions of the Court on the law of nuisance and its maintenance in Kansas. The jury was told that if it found the appellant did in fact create and maintain a nuisance in the operation of his oil well and tank batteries and that the nuisance proximately caused injuries to appellees' cattle, then it should assess the amount of actual damages including loss of profits reasonably anticipated.

Having thus instructed the jury on the issue of actual damages as and for nuisance, the Court then told the jury, "There is one other matter which you must determine, if you find that the plaintiffs herein are entitled to recover. You must make the determination as to whether or not the conduct of the defendant amounted to wanton, reckless disregard of the rights of these plaintiffs so as to entitle the plaintiffs herein to recover punitive and exemplary damages". And "If the conduct of the defendant was such as to amount to a wanton and reckless disregard of the rights of the plaintiffs in the enjoyment of their property, and discloses such gross neglect of duty by him as to evince a reckless indifference to the rights of others, then the plaintiffs may claim that punitive damages should be assessed against the defendant."

■ Kansas follows the general rule which permits the assessment of punitive or exemplary damages in addition to actual or compensatory damages by way of punishing the wrongdoer for willful or wanton invasion of property rights. The burden is sustained by showing facts from which the jury can infer a reckless indifference to the personal or property rights of others. See Tidewater Oil Company v. Jackson, 10 Cir., 320 F.2d 157, citing Watkins v. Layton, 182 Kan. 702, 324 P.2d 130; Corwine v. Maracaibo Oil Exploration Corporation, 184 Kan. 151, 334 P.2d 419. See generally McCormick on Damages,

Anno. 17 A.L.R.2d 527; Punitive Damages in Tort Cases, 44 Harv.L.R. 1173; Exemplary Damages in the Law of Torts, 70 Harv.L.R. 517. A conscious, reckless indifference justifying punitive damages under Kansas law " * * * comes between negligence on the one hand and willful or malicious misconduct on the other. * * * It is more than negligence and less than willfulness. * * * If the actor has reason to believe his act may injure another and does it being indifferent of whether it does or not, he is guilty of wanton misconduct." See Frazier v. Cities Service Oil Co., 159 Kan. 655, 157 P.2d 822, cited and quoted in Allman v. Bird, 186 Kan. 802, 353 P.2d 216.

■ From the earliest times Kansas law has sanctioned the allowance of actual damages to property, real and personal, for the pollution of waters and water courses. See Donley v. Amerada Petroleum Corp., 152 Kan. 818, 106 P.2d 652; Rusch v. Phillips Petroleum Company, 163 Kan. 11, 180 P.2d 270; Corwine v. Maracaibo Oil Corp., supra, Anno. 49 A.L.R.2d 253. Generally punitive damages in addition to compensatory damages are assessable for the persistent maintenance of a private nuisance. See Gorman v. Sabo, 210 Md. 155, 122 A.2d 475; Southland Company v. Aaron, 224 Miss. 780, 80 So.2d 823; Sutherland on Damages, 4th Ed., Vol. 4, § 1052. While we have found no Kansas case specifically sanctioning the assessment of punitive damages for pollution of a stream on the nuisance theory, there is no reason to doubt that Kansas courts would embrace the nuisance theory for punitive damages. It seems reasonable to assume that the Court would proceed by analogy to its negligence cases in which punitive damages have been awarded for pollution of waters or water courses. This being so, it seems fairly certain that the mere commission of a nuisance justifying an award of actual damages would be insufficient to justify the assessment of punitive damages as a penalty. In other words, to be liable for actual damages one need only create or commit a nui-

sance, but to be punished for it he must create and persistently maintain it with a reckless disregard for the rights of others. On this legal premise the proof falls far short of showing an indifferent maintenance of a nuisance.

There was proof to be sure that the tank leaked, the oil seeped into the pond, and the cattle were exposed and damaged. A nuisance was thereby committed. But, there is no proof whatsoever in this record that it was persistently, recklessly or indifferently maintained. On the contrary, the proof is undisputed to the effect that when the oil leaked, seeped and polluted and the cattle were exposed to it, the pond was fenced, the leak was repaired, and there was no further seepage and no further exposure. The nuisance was abated.

The only proof relied upon to support the claim of conscious indifference was the fact that the equipment was old and dilapidated at the time of the leak and that it was old and dilapidated about two years later. Evidence of the condition of the property in 1963, two years after the leak and seepage, was admitted apparently on the theory of "retrospective presumption", according to which if the equipment were old and dilapidated in 1963, it must be presumed to have been old and dilapidated when the tank leaked and the oil seeped into the pond, and that persistent use of old and dilapidated equipment is evidence of reckless indifference to the rights of the appellees. Whatever may be said of the theory of retrospective presumption, i. e. see Donley v. Amerada, supra, we do not think it has any probative force here. The important fact is that the tank did leak in November, 1961, and the oil seeped into the pond. If it did leak thereafter, as the evidence seems to show, there is no evidence that it seeped into the pond or polluted the water or, if it did, that the cattle were ever exposed to it. There is nothing in the post-incident facts tending to prove an indifferent, persistent maintenance of the nuisance justifying punitive damages.

These facts are quite different from Corwine v. Maracaibo Oil Corp., supra, where the pollution was consciously created and persistently maintained in the face of repeated complaints. And, it is demonstrably unlike Donley v. Amerada, supra, where "it was established by clear, strong and convincing evidence" that the acts complained of "were intentional with full knowledge of their character and without cause or excuse". And, our case is clearly distinguishable from Rusch v. Phillips Petroleum Company, supra, where evidence clearly showed the pollution was consciously persistent and indifferent. While the trial court is the primary judge of the sufficiency of the facts to go to the jury in a particular case, we are convinced that the evidence in this case was wholly insufficient to justify the submission of the issue of punitive damages.

The only remaining point in the case is the sufficiency of the evidence to support the amount of compensatory damages awarded. The appellees say that the contention is moot because the amount of the verdict for actual damages was voluntarily paid into the registry of the court, and the appellant having thereby acquiesced in the Court's judgment cannot now complain of it.

Applying the federal rule, we have held that "payment of a judgment into the registry of the court does not bar an appeal therefrom when repayment may be enforced". See United States v. Featherston, 10 Cir., 325 F.2d 539, 541, citing Leader Clothing Company v. Fidelity and Casualty Company, 10 Cir., 227 F.2d 574, 575. The record before us shows that on February 25, 1964, appellant paid into the registry of the trial court $7,950, the amount of the verdict for actual damages, and on March 18 filed a supersedeas bond in the amount of $17,950, the total amount of the judgment. The Clerk's certificate filed in this court recites that the $7,950 has not been disbursed, and we will assume in view of the supersedeas bond that the amount paid in the registry of the court remains within the reach of ap-

pellant in the event of a reversal of the judgment.

The case was submitted to the jury on the theory of loss of "anticipated profits", the Court telling the jury that appellees were entitled to recover all actual damages resulting from injuries to their cattle by way of reasonably anticipated profits. In that connection the jury was told that it must determine from the evidence whether the cattle would have gained and increased in value had they not been damaged and injured by drinking the polluted water, and it must further determine what the cattle would have brought had it not been for such injuries, if any.

The claimant must establish the loss "by the most accurate basis possible under the circumstances. He must produce the best evidence reasonably obtained." See Garcia v. Mountain States Telephone & Telegraph Co., 10 Cir., 315 F.2d 166. Loss of profits where reasonably ascertainable have been the usual measure of compensatory damages where, as here, the right to recover damages has been proven with certainty. See Gano v. Hall, 188 Kan. 491, 363 P.2d 551.

The evidence in support of this theory of damages was taken from the sketchy records kept by appellees for a period of two years after the incident and before trial. The records identified the animals, the purchase date and the total sales price. In arriving at actual damages from the sale of the cattle appellees first consolidated the prospective sales price of certain groups or individual cattle which were sold at frequent intervals from November, 1961, to April, 1962. Appellees also testified what respective animals would have brought had they been sold without exposure to the polluted water or had they not died. On this theory the estimates of loss of profits exceeded the amount awarded by the jury. The jury's verdict was well within the proof, and the judgment as to the actual damages is affirmed.

The judgment as to punitive damages in the amount of $10,000 is reversed.